THOMAS CHADOIN v. RICHARD MAGEE AND OTHERS.

An injunction will not lie to restrain the prosecution of an action of forcible entry and detainer, before a Justice of the Peace, on the ground merely that the plaintiff therein had no title to the land, or possession or right to the possession thereof, but that the title and possession are with the defendant, the plaintiff in the suit for injunction.

The Court knows historically that it was the practice in the colony of Austin and Williams to permit colonists to select lands already surveyed, and it only remained for the Commissioner to issue the title.

The application and field-notes of the survey (of the colonist in this case) were returned with the archives of the colony to the General Land Office. After the opening of the land office in 1838, he obtained his certificate. Having obtained his certificate without delay, he had the right, (in preference to others,) we think, to have it applied to his survey, and the land patented to him, if he did not delay making a return of it to the land office unnecessarily and unreasonably, and until the rights of other parties had intervened, although he had no order of survey. That was dispensed with by the action of the officers in admitting and recording his application, and permitting him to select land already surveyed.

If, in a properly directed endeavor to apply his certificate to his field-notes, he was misled and prevented by the mistake of the Commissioner of the General Land Office in sending the field-notes (of appropriated lands to the respective counties, upon the opening of the land office in 1838) to the wrong county, without laches or fault on his part, and if, as soon as he reasonably could obtain information of the mistake, he took proper steps to correct it, his right ought not thereby to be defeated ; nor could it be by the intervention of one who, with a knowledge of his right, took advantage of the mistake, for that purpose.

Error from Fayette. Tried below before the Hon. John Hancock.

On the 5th of October, 1850, Thomas Chadoin commenced an action of forcible entry and detainer against Richard A. Magee, to dispossess him of a certain league of land in Lavaca county, making oath that he was in the peaceable possession of said land, when said Magee illegally entered into and now detains said league of land. On the 31st of same month said Magee and Nicinda M. Magee, his wife, obtained an injunction from the Hon. Fielding Jones, Judge of that District, restraining said Chadoin from prosecuting his said action of forcible entry and detainer, and the Justice of the Peace from proceeding further therein. Magee and wife set forth, as ground for their injunction, that on the 9th day of February, 1841, Samuel Alexander obtained a patent for the league of land in question, then in Fayette, now in Lavaca county, setting forth the field-notes of the same ; that on the 19th day of July, 1841, the said Samuel Alexander sold said league to Jerome B. Alexander, and that the said Jerome B., in the year 1842, departed this life, having willed one-fourth part of said league, after deducting the attorney's fee of J. A. Morris, to Nicinda M. Magee ; that at the February Term, 1850, of the Probate Court of Fayette county, the said league was partitioned amongst those claiming under said will ; and the tract of which Magee and wife had taken possession was allotted to the said Nicinda ; that on the 23d day of August, 1850, they took possession of the said part of said league, so allotted to them, and made improvements thereon of value ; that a copy of the partition, and proceedings of said Probate Court of Fayette county, had been recorded in Lavaca county, before the commencement of said action, and that no person was in possession of said tract so allotted to said Nicinda Magee. They deny that they have possession of said

league of land, but only of 640 acres, and pray an injunction, and decree quieting their title to said land.

At the April Term, 1851, of the Lavacca District Court, Chadoin filed his answer, upon oath, admitting the issuance of a patent to Samuel Alexander, for the league of land in question, at the time specified in said petition, and the conveyance thereof to Jerome B. Alexander; and that J. B. willed the one-fourth thereof to N. M. Magee; but stated as basis of his claim, that in the year 1834, an order of survey, for said league of land, was granted him by Stephen F. Austin, Empressario, and that he had the same surveyed by Wm. R. Hensley, an authorized surveyor of Austin's colony; that said order and survey were legally obtained by him, who was then and has been ever since a citizen of Texas; that the same was legally surveyed in all respects before the closing of the land offices, by act of the consultation; and that the said survey was proven by said surveyor and two witnesses; that at a Term of the Board of Land Commissioners for Washington county, he applied for and obtained a headright certificate for a league and labor of land, and applied the same to the said survey made for him prior to the closing of the land offices; that his said certificate was regularly approved and recommended by the Board called the Travelling Board of Land Commissioners, under the Act of 1840, to detect fraudulent land certificates; that the said Samuel Alexander had notice of defendant's claim, long before he located upon said land, and he so located with the express purpose to defraud him out of his land; and that J. B. Alexander also had notice before said Samuel so located upon the same; and that the said sale from Samuel to J. B. was made without consideration, and for the express purpose of defrauding defendant out of his land; that on or about the 28th day of April, 1850, he took actual possession of said league of land, and made valuable improvements thereon, and held quiet possession thereof until the said Magee took forcible possession of the same; whereupon he commenced an action of forcible entry and detainer, to remove him therefrom. He further set forth that James Webb, of Travis county, A. Emily Robison, wife of Joel W. Robison, and Lucretia J. Irwin, wife of Alexander Irwin, of Fayette county, and Jerome B. Alexander, a minor, also of Fayette county, have some claim upon said land, derived through the said Samuel and J. B. Alexander, all of whom he prays to be made parties to said suit, and prays a decree divesting them of all such claim

to said land, and quieting the title to the same in him.   At said Spring Term, 1851, defendant moved to dissolve the injunction, which was overruled by the Court.

At the Spring Term, 1853, of said Court, the venue was changed, and said cause removed to Fayette county.   The parties made by defendant's answer, viz: Joel W. Robison and wife A. E. Robison, Alexander Irwin and wife J. L. Irwin, James Webb, and Jerome B. Alexander by guardian *ad litem*, all demur to said answer, and set out their claims to portions of said league of land, derived in the same manner in which N. M. Magee derives hers.

At the Fall Term, 1853, of the Fayette District Court, the defendant Chadoin filed an amended answer, and set forth that in the year 1829, he immigrated to Texas, and became one of the recognized colonists of Austin's and William's colony, and on the 24th day of June, 1835, he applied in due form of law, for the league of land in question, as appears from a copy of said application, set out in said amendment, and that said application was granted and entered of record in said colony, and that the survey made of said league of land by Wm. R. Hensly, the Surveyor of said colony, was recorded in the records thereof, the field-notes of which are set forth; that a very short time elapsed, after said application, before the closing of the land offices by the act of the consultation, whereby he was prevented from perfecting his title to said land; that immediately after the opening the land offices, for perfecting claims to land, viz: on the        day of Febr'y, 1838 defendant, after making the necessary proof, obtained his headright certificate for a league and labor of land, from the Board of Land Commissioners for Washington county; that a short time after obtaining said certificate, he had the field-notes of his said survey examined by Wm. R. Hensley, who certified their correctness, and also proved them by two respectable chain carriers, and on the 23d day of June, 1838, applied to them his said certificate, paid all the Government dues thereon, to the Receiver of public moneys for Colorado county, as shown by his receipt, set forth in full, with also a certificate from the Commissioner of the General Land Office, showing that he had applied for said land; that after having his field-notes so examined, and proven, and paying all the fees required by law, he sent the same with his said certificate, recommended as aforesaid to the General Land Office for patent; but said field-notes were not admitted to record, because they were examined in Colorado county whilst

the land lay in Fayette county; and because the said Samuel and J. B. Alexander, having full knowledge and notice of defendant's prior location, had located on said land in Fayette county, after defendant had paid for the same, in Colorado county; that he paid for said land in Colorado county, because he had applied for the same long previous to the closing the land offices, and the establishment of the counties of Colorado and Fayette; and upon the opening the land offices in February, 1838, the Commissioner of the General Land Office, mistaking in which county said land lay, sent to Colorado county a certified copy of said field-notes, with all the lands that had been previously surveyed, lying within the limits of said county, all of which were regularly recorded and recognized as appropriated land; which act of the said Commissioner misled defendant, who was not a surveyor, and had no means of knowing in which county said land lay, the lines of said counties having never been run out; that he had no intimation that his said land did not lie in Colorado county, until long after he had paid therefor, and as soon as he heard that it probably lay in Fayette, he notified the Surveyor of said county, of said claim, and requested him not to survey said land for any other applicant, until he might be able to take the necessary steps to perfect his title to the same; but before he was able to perfect his title, the said Samuel and J. B. Alexander, although defendant notified them in person of his claim, and that they would locate at their own risk, located upon said land, and succeeded in obtaining patents in violation of defendant's rights; that defendant's field-notes embrace the greater portion of the surveys made for both said Alexanders, viz: that of 640 acres patented to J. B., the field-notes of which are set out, and of the league made for Samuel, embracing all the front of said surveys, wherefore he asks an order of survey and plot to be made of all said surveys to show wherever they conflict, and also that John G. Holman, administrator, &c., of Jerome B. Alexander, be made a party to said suit; that he has at all times, since his immigration to Texas, in 1829, been a citizen thereof; that he located upon said land in good faith, and paid therefor, and has done all in his power to perfect his title to the same, which he would have been able to do, but for the mistake of the Commissioner of the General Land Office, and the fraud of the Alexanders in attempting to cheat defendant out of his rights. J. G. Holman, administrator, demurred to and answered said amendment, and all said parties

by amendment demurred to the answer of defendant, which demurrer was sustained by the Court, at Spring Term, 1854, and the injunction made perpetual.

*B. Shropshire,* for plaintiff in error.

*Webb & Harcourt,* for defendants in error.

WHEELER, J. However the question of title, raised by the pleadings, may be determined, it seems clear that there was error in the judgment of the Court refusing to dissolve the injunction. If, as alleged, the defendant therein had never been in possession, and had no right of action by forcible entry and detainer, his having instituted the proceeding would only put the defendants therein to the necessity of making their defence, to make manifest his want of right. Their defence must have been successful. The having instituted suit, without any cause of action, could not ultimately affect any right of theirs, and was no ground for an injunction.

An injunction is never granted to stay proceedings in a suit, before judgment, merely because the plaintiff therein has no cause of action. (Story's Eq. Ch. XXIII.)

The petition not having laid a sufficient foundation for the awarding of an injunction, it follows, that the judgment of the Court perpetually enjoining the defendant from proceeding in the action, is erroneous, and must be reversed. And we might go further and dismiss the case. But as it may be that the plaintiffs might so amend as to present a proper case for the interposition of the Court; as the defendant has endeavored to assert a superior right in himself, as between him and the plaintiffs and other parties now before the Court, and it will probably be better for all parties that the question of title brought into litigation by the pleadings should be finally determined in this suit, but it is believed the facts are not sufficiently disclosed by the record to enable the Court satisfactorily to determine finally the question of title, the case will be remanded, in order to enable the parties respectively, and the Court, more advisedly to proceed to the assertion and determination of the matters in controversy.

In respect to the question of title, it will suffice for the present to observe, that it appears by the defendant's answer that he was admitted as a colonist in the colony of Austin and Williams, and

was permitted, as we historically know the practice was, to select land already surveyed, and it only remained for the Commissioner to issue the title, when the land office was closed by the act of the consultation. The application and field-notes of the survey were returned with the archives of the colony to the General Land Office. After the opening of the land office, in 1838, he obtained his certificate. Having obtained his certificate, without delay, he had the right, we think, to have it applied to his survey, and the land patented to him, if he did not delay making a return of it to the land office unnecessarily and unreasonably and until the rights of other parties had intervened, although he had no order of survey. That was dispensed with by the action of the officers in admitting and recording his application, and permitting him to select land already surveyed. If, in a properly directed endeavor to apply his certificate to his field-notes, he was misled and prevented by the mistake of the Commissioner of the General Land Office in sending the field-notes to the wrong county, without laches or fault on his part, and if as soon as he reasonably could obtain information of the mistake, he took proper steps to correct it, his right ought not to be thereby defeated. Nor could it be by the intervention of one who, with the knowledge of his right, took advantage of the mistake, for that purpose.

The difficulty in the appellant's case arises from his apparent laches in proceeding to secure and assert his right. He appears to have had strong equities; and may still have rights, if he has not lost them by his own supineness and negligence. A full development of the facts upon another trial, may present the question in a clearer light. And for the present, therefore, as the decision will probably depend upon facts not now before us, we forbear the expression of a more definite opinion.

The judgment is reversed and the cause remanded.

Reversed and remanded.