ANDREW WYLLIE V. R. H. WYNNE AND OTHERS.

Where land scrip of the Republic of Texas, issued in 1836, was filed in 1840 with a County Surveyor, with written directions to locate the same on a tract of land designated by reference to a previous survey which had been abandoned : Held, to be a valid location of so much of the tract so designated as the scrip called for, and to operate an appropriation of the same by the o · ner of the scrip, notwithstanding no survey of such new location was made until 1852. Held, further, that the file and the certificates under which it was made, were constructive notice to all that the land designated in the file was appropriated.

The case of Williams v. Craig, 10 Texas R., 437, overruled so far as it conflicts herewith ; and the case of Lewis V. Darst, 10 Texas R., 398, explained and distinguished from this case.

It was undoubtedly the right, and perhaps the duty, of a party claiming

under such scrip and location, to show that his scrip remained in the Surveyor's office in support of his file ; other ꞏise it might have been pre-sumed, in 1845, that his file and location were abandoned.   It was *error*, therefore, to exclude such evidence.

Where a file was made by a person who signed his name simply as "agent," without disclosing the name of his principal, it may, in the absence of evidence, be presumed that in making the file he acted as agent of the owner of the scrip ; and the file will enure to the benefit of such owner.

The practice of the country which prevailed previous to the act of February 10th, 1852, of holding lands by files only, without surveys, *held*, not to have been in contravention of the law as it then existed.

A patent may be impeached upon other grounds besides fraud.   If issued by the Government, either advisedly or by inadvertence, for land which had previously been legally appropriated by another person than the patentee, it could confer upon the patentee no right to such land ; and it may be successfully impeached by such person without proof of fraud in obtaining it.

In a suit, therefore, wherein the plaintiff showed that, before the issuance of the patent under which the defendants claimed, he had legally appro-priated to himself the land in dispute, it was *error* to instruct that " If the jury believe from the evidence that the defendants claim under a patent, you should find for the defendants, unless you believe that defen-dants' patent was obtained by fraud."

APPEAL from Gonzales.   Tried below before the Hon. Fielding Jones.

This suit was instituted by appellant against appellees on the 12th March, 1855, for the purpose of trying the title to 2560 acres of land in Gonzales county.

The plaintiff claimed under four pieces of land scrip for 640 acres each, issued to John Withers by Sam Houston, President of the Republic of Texas, on the 12th day of December, 1836.   On the 1st day of June, 1840, W. D. Wallock, who signed simply as " agent," filed this scrip and other scrip and certificates amount-ing in all to 4480 acres, with the County Surveyor of Gonzales county, directing him, in writing, to locate the whole on " Survey No. 68, in class 10, which was originally surveyed for the heirs of Mrs. A. W. Allston," " so as to cover so much of the league and labor held by survey No. 68, class 10, as the whole 4480 acres will cover."   The survey thus referred to had been made May 24th, 1838, but, as it appears, had been abandoned.   On

November 17th, 1852, the locations of the scrip thus made were surveyed by the District Surveyor of Gonzales Land District, and on the 25th of August, 1853, the field notes were returned to the General Land Office. On the 26th of January, 1853, Withers by deed conveyed to Wyllie, the plaintiff, all his interest in the scrip and in the land on which it had been located. The scrip was issued under the act of the Congress of the Republic of 10th of December, 1836, and contained the stipulation that "the holder of this scrip shall receive his title without any other expense than the purchase money."

The title relied upon by the defendants, consisted in a patent from the State to George W. Ward and Robert H. Wynne, assignees of James McKenzie, of date July 17th, 1848, for one league and labor, which patent emanated from the headright certificate of said McKenzie, located in 1845, upon the land in controversy. There were conveyances from the patentees to the other defendants not deemed necessary to describe.

The other facts appear in the opinion.

*Parker* and *Nichols*, and *Alexander*, for appellant.

*Waul* and *Wilson* for appellees.

BELL, J. We are of opinion that the court below erred in excluding the testimony offered by the plaintiff, and also in the instructions given to the jury. The testimony in the case does not disclose the particular circumstances under which the file was made by W. D. Wallock with the County Surveyor of Gonzales county. The land scrip in question was issued to John Withers, and there does not appear to have been any assignment or transfer of the scrip previous to June, 1840, when the file was made. The file is signed by "W. D. Wallock, agent," and it may be presumed that he acted, in making the file, as the agent of the person to whom the scrip belonged. At all events, as between the parties to this suit, the file must be held to have enured to the benefit of the owner of the scrip, by virtue of which the file was made. It was undoubtedly the right, and, under the circumstances of this case, it was perhaps the duty of the plaintiff to show that his cer-

tificates or scrip remained in the Surveyor's office in support of his file, otherwise it might properly have been presumed in 1845, when the location of the defendant was made, that the file of the plaintiff had been abandoned. The plaintiff offered to show, by the testimony of Chenault and Bellinger " That the location and certificates under which the plaintiff claims were on file in the office of the Surveyor of Gonzales county, at the time and before the location was made under which the defendants claim." This evidence was rejected by the court below, and we think erroneously.

The instruction given to the jury by the court below, made the case to turn upon the single fact that the defendants claimed under a patent. The court said, " If the jury believe, from the evidence, that the defendants claim under a patent, you should find for defendants, unless you believe that defendants' patent was obtained by fraud." There was no evidence of fraud on the part of the defendants. The patent under which they claimed was in evidence : it follows, therefore, that the instruction of the Judge was decisive of the whole case. We do not understand it to be the law that a patent can be impeached only for fraud. On the contrary, we suppose that a patent issued either advisedly or inadvertently by the Government, can confer no right to land which has previously been legally appropriated by another person than the patentee.

The file made by W. D. Wallock in June, A. D. 1840, designated with sufficient particularity the land which he intended to appropriate ; and the file and certificates by virtue of which it was made, were constructive notice to all others that the land designated in the file was appropriated. It was the practice of the country to a considerable extent, and one which was recognized by the court, to hold lands by files merely, without actual surveys. And we believe this practice was in conformity with law.

The 23d section of the act of limitations of 1841, provides " That all certificates for head-rights, land-scrip, bounty warrant, or any other evidence of right to land, recognized by the laws of the government, which have been located or surveyed, shall be deemed and held as sufficient title, to authorize the maintenance

of actions of ejectment, trespass, or any other legal remedy given by law."

It has sometimes been contended that the words "located or surveyed," used in the section just quoted, were intended to mean the same thing, and that a survey was a necessary part of a location. But aside from the practice which existed to the contrary, it may be shown from the statutes themselves that the word "location" is not used, or is not accurately used as synonymous with the word "survey." For instance, in the 8th section of the act of February 10th, 1852, it is said, "All lands heretofore located by virtue of any genuine claim to land, shall be surveyed within twelve months from the passage of this act, and all lands which may be hereafter located shall be surveyed within twelve months from the date of the location, &c." We are not aware of any law which required a survey to be made of land previously located, until the passage of the act just quoted, of the 10th of February, 1852. That law was doubtless enacted to remedy what had become an evil in the land-system of the State. Men had appropriated the public domain by filing their certificates, and neglected to have their lands surveyed for so long a time that it became necessary for the State to take measures to compel parties to survey the lands upon which they had filed, and to return the field notes. The plaintiff in the present case obeyed the requirements of the act of February, 1852, by causing the land designated by his file to be surveyed, and by returning the field notes to the Land Office before the 31st day of August, 1853. If it be true then that he did not abandon his location, but permitted his certificates or scrip to remain in the Surveyor's office where his file was made, and surveyed his land and returned the field notes to the Land Office as soon as the law required him to do so, then we cannot perceive any clear ground on which his right to the land which he has sought to appropriate can be denied; especially when he claimed as the purchaser of scrip which stipulated that "he should receive his title without any other expense than the purchase money." We are aware that in the case of Lewis v. Darst, 10th Tex., 398, it was said that "The locator will not be permitted to hold a preference, and keep out other locators, after

Wyllie v. Wynne.

reasonable time for his survey to be made and returned to the same office;" and further, that the party "was chargeable with great negligence in permitting the land he had designated to remain two or three years without being surveyed." But in the case of Lewis v. Darst, there had been no file, and the opinion of the court put the case upon the ground that Lewis had made no file, as was required by the instructions issued by the Commissioner of the Land Office on the 2nd of February, 1838. The case of Williams v. Craig, 10 Tex., 437, appears to be in opposition to the view which a majority of the court have taken of the case now before us. The facts of that case do not appear to have been very fully developed. The court, however, express the opinion that where a party filed his certificate in 1838 and designated the land which he wished to appropriate, but failed to have the land surveyed and the survey returned to the Surveyor's office until 1841, the presumption would arise, from lapse of time, that the certificate had been withdrawn; and another location and survey made in 1841, even with knowledge of the previous file made in 1838, would secure the land to the last locator. In the correctness of this proposition, a majority of the court are now not able to concur. We think it requires from the party who made a location upon public land, a degree of diligence never required by the law, until the passage of the act of February 10th, 1852.

The judgment of the court below, in the present case, is reversed, and the cause remanded for another trial.

Reversed and remanded.

Chief Justice Wheeler dissenting.