### W. B. SHERARD ET AL. V. HENRY AVERY ET AL.

No. 386.—Decided March 3, 1896.

**1. Return of Field Notes—Presumption of Regularity.**

Field notes of a survey dated in 1847 being found in the general land office subsequent to August 31, 1853, it will be presumed that they were returned by the surveyor within the time prescribed by the Act of February 10, 1852, requiring the return of field notes prior to August 31, 1853, or within one year from their date. It will also be presumed that the Commissioner of the general land office would not have received the field notes unless they had been returned within the time required by law. All official acts of public officers are presumed to have been done at the time and in the manner required by law. (P. 306.)

**2. Presumption from Issuance of Patent.**

Patent was issued upon a survey made in 1847; from its issuance it will be presumed that the field notes and certificate were duly returned to the land office within the time prescribed by law: or that the facts existed authorizing the issuance of such patent. (Pp. 306, 307.)

**3. Case in Judgment.**

Title to a league of land was issued in 1832 to Avery by the proper authorities in Austin's Colony. The land was partly in Robinson's Colony. In 1854 the Legislature validated the grant, saving the rights of adverse claimants. The Hays bounty warrant for 1280 acres was located and land surveyed in 1847 upon that part of the Avery grant in Robinson's Colony. Patent issued on the Hays survey subsequent to the validating act gave title, unless it should be shown that the Hays field notes had not been duly returned. (P. 307.)

### 4. Customs and Rules in Land Office.

Prior to the Act of October 24, 1871, there was no statute regulating the correction of defective field notes. But a practice obtained in the general land office by which the commissioner returned incorrect field notes to the surveyor of the county or land district for correction. This practice has been recognized by this court as legal. (Pp. 307, 308.)

### 5. Unauthorized Act of Surveyor.

The endorsement upon the original field notes, made in 1847, "cancelled by me June 28, 1859. W. K. Duerson, Co. S. W. County," was only evidence that the paper was at the time in Duerson's possession. He had no power to cancel the field notes. He had "corrected and resurveyed" July 17, 1858. As his possession was legal under the rules of the land office, the endorsement and his attempted cancellation did not affect the right of the subsequent patentee under the said Hays survey. (P. 309.)

### 6. Validating Act.

No presumption can arise from the validating act of 1854 as regards the return of the field notes of the Hays survey, because the passage of that act involved the determination of no question of fact relative to it. The extent of the validation was limited by the existence of prior rights—these rights to be determined in the first instance by the Commissioner of the land office. The issuance of the patent assumes the decision of the Commissioner upon the question. The presumption is that the facts sustained the patent when issued. (P. 309.)

ERROR to Court of Civil Appeals for Third District, in an appeal from Williamson County.

Action of trespass to try title. The plaintiffs claimed under a patent issued in 1865, upon a survey made in 1847 by virtue of a bounty warrant issued to W. C. Hays. The defendants claimed under a grant to Willis Avery made in 1832, validated in 1854.

Plea of not guilty and limitations. On trial the judge instructed the jury:

"In this case the defendants have shown a title which, by virtue of the validating act of February 2, 1854 (Paschal's Digest, art. ——; Oldham & White's Digest, art. 1255), was validated, except as to the rights of persons therein having prior vested rights. The plaintiffs claim under a patent issued October 14, 1865, and a location and survey made by virtue of a land certificate in 1847, field notes of which survey are in evidence. But the plaintiffs having failed to introduce any evidence to prove that the field notes of 1847 were returned to the General Land Office prior to August 31, 1853, as required by act of February 10, 1852 (Paschal's Digest, art. 4562), or that a relocation or resurvey was made so as to have kept alive a vested right up to the passage of a validating act of 1854, which validated the titles under which defendants claim, the plaintiffs have failed to show a superior title to that adduced by the defendants, even if upon the other points in the case the plaintiffs should prevail. You are therefore instructed to return a verdict for the defendants.

Verdict and judgment for defendants was affirmed on appeal by the Court of Civil Appeals.

*Barnard & McGown* and *West & Cochran*, for appellants.—The Avery grant, under which defendants claim, being a void grant except by reason of the validating act of 1854, which act by its terms withheld its valida-

tion in so far as it affected the rights of third parties previously acquired, the burden was upon defendants to show that the rights acquired by the owners of the Hays certificate, under their survey of February 15, 1847, prior to said act, had lapsed through their neglect to return the field notes to the general land office within the time required by law, if such was the fact, for the reason that said location and survey created a vested right in the holders of said Hays survey and made a prima facie case against said validating act.

On December 11, 1846, a bounty warrant was issued to W. C. Hays. Under this warrant the land in controversy was regularly surveyed on February 15, 1847. This survey was corrected by resurvey of July 17, 1858.

It is not shown when the original field notes were filed in the General Land Office, but the field notes of the corrected survey were filed July 27, 1858.

The patent issued to the heirs of W. C. Hays, under whom plaintiffs assert title, on October 14, 1865, and this is plaintiffs' title in so far as the issues of this appeal are concerned.

The defendant's title, in so far as this appeal is concerned, is as follows:

Spanish grant to Willis Avery, dated November 13, 1832, which grant, in so far as it conflicted with the land in controversy, was void because to this extent it was without the limits of Austin's Little Colony, the dividing ridge between Brazos River and the Colorado River being the northern limit of that colony, as appears from sketch on page 41 of record. V. C. R. Avery testified that "about the time my father settled on Brushy Creek Morgan Hamilton located several certificates over that part of the Willis Avery ―― league which lay north of the divide which marked the boundary between Austin's Little Colony and Robertson's Colony. Suits grew up out of these adverse locations, and the case between Hamilton and my father was taken to the Supreme Court, and after it was there decided against my father he bought the John A. Crosby survey of 1280 acres," etc., and A. S. Howeren also used the sketch above referred to, showing the location of the land in controversy with reference to the lands of Willis Avery league, showing that all the land in controversy was embraced within the boundaries of the Willis Avery league, and that about fifteen acres (only) of the land set apart to the heirs of Willis Avery's heirs was south of the dividing ridge, and within Austin's little colony.

The boundary of Austin's Little Colony are defined, so far as pertinent, as follows: "Thence east on a parallel line with said road to the dividing ridge of the waters of the Colorado and Brazos, which is the boundary line between this colony and the colony of the Nashville Company, etc." (Sayles' Early Laws, Vol. 1, p. 93.)

In 1854, on February 2, the Legislature of the State of Texas passed the following validating act: "The headrights of land granted to colonists before the thirteenth day of November, A. D. 1835, and lying

and being intersected or crossed by the boundary line of Robertson's colony and Austin's little colony, and being part in one of said colonies and part in the other, are hereby declared to be as valid as if such headrights were lying and being wholly within the colony where such headright grants were issued, provided that nothing herein contained shall be so construed as to affect the rights of third parties." Sayles' Early Laws, Vol. 2, p. 332.

Paschal's Digest, art. 4562, Act of February 10, 1852, provides: "The field notes of all surveys made previous to the passage of this act, shall be made out and returned in the manner now required by law, to the General Land Office on or before the 31st day of August, A. D. 1853, or they shall become null and void; and the said survey shall become vacant land, and be subject to be relocated and surveyed as in other cases, by any persons holding a genuine land certificate, or other legal evidence of claim to land."

By Act of January 29, 1840, R. S., art. 3953, it is provided:

"Whenever the field notes of a survey and the land certificate by virtue of which the same was made, have been returned to and filed in the General Land Office within the time prescribed by law, if it shall appear after due examination that such survey was correctly and legally made upon vacant and unappropriated land, and that the land certificate is genuine and unsatisfied, it shall be the duty of the Commissioner of the General Land Office to make out and deliver to the rightful owner thereof, his agent or legal representative, a patent for the land described in said survey."

By location and survey a vested right was acquired. Wyllie v. Wynne, 26 Texas, 43; McKinney v. Grassmeyer, 51 Texas, 382; Milam Co. v. Bateman, 54 Texas, 153; Cassin v. O'Sullivan, 61 Texas, 595; White v. Martin, 66 Texas, 345.

The law presumes the officers did their duty, i. e., the field notes were returned before August 31, 1853, otherwise the patent would not have been issued: R. S., art. 3953; Williams v. Talbot, 27 Texas, 168; Goode v. McQueen, 3 Texas, 260; Jenkins v. Chambers, 9 Texas, 231; Stafford v. King, 30 Texas, 258; Blythe v. Houston, 46 Texas, 76; Deen v. Wills, 21 Texas, 649; Kimbro v. Hamilton, 28 Texas, 560; Miller v. Brownson, 50 Texas, 591; Miller v. Moss, 65 Texas, 181; O'Neal v. Manning, 48 Texas, 403.

*W. K. Makemson* and *Rector & Rector,* for appellees.—The court did not err in peremptorily instructing the jury to return a verdict for the appellees, because the appellees had shown a grant in 1832, validated in 1854, and the appellants claimed title under a certificate located in 1847, but had failed to show the return of the field notes to the land office prior to August 31, 1853. The issuance of a patent in 1865 on corrected field notes made in 1858, would not warrant the presumption that the field notes had been returned in due time to the land office. Atkinson v. Ward, 61 Texas, 383.

It did not devolve on the holders of the Avery grant to show the invalidity of the Hays location, but on the contrary, the vendees of grantee in the Hays certificate, being plaintiffs below, were required to show their own title, and that it was prior in point of time to that of appellees; and a patent, issued eleven years after validation of appellees' grant, did not show such prior title in the appellants.

The burden was on appellants to show a right prior to February 2, 1854; and to do this they were required to show a valid certificate, its location and survey and return with the field notes to land office on or before August 31, 1853. Pas. Dig., art. 4562; De la Garza v. Cassin, 72 Texas, 443.

There was no question of the lapse of rights once shown to exist. The question decided by the court was, that the appellants had utterly failed to show any rights at all. Without proof of the return of field notes on or before August 31, 1853, the appellants showed no rights at all.

BROWN, ASSOCIATE JUSTICE.—On the 11th day of December, 1846, the Adjutant-General of Texas issued to W. C. Hays the bounty warrant No. 157, for 1280 acres of land, which was approved by the Commissioner of Claims July 20, 1860.

The bounty warrant was located for M. C. Hamilton on the land in controversy, February 15, 1847. Field notes were made out dated of that date and signed by the surveyor of the Milan Land District. These field notes were endorsed as follows: "Canceled by me June 28, 1859— (signed)—W. K. Duerson, Co. S. W. County;" also, "corrected and resurveyed July 17, 1858, W. K. Duerson, deputy surveyor M. District." The plaintiff introduced a certified copy of the field notes upon the trial. There was nothing to show the date at which they were first returned to the General Land Office. Plaintiff also introduced certified copy of the corrected field notes made by W. K. Duerson July 17, 1858, which are marked "filed July 27, 1858." These corrected field notes recited that he, the surveyor, corrected and resurveyed 1280 acres of land made for M. C. Hamilton, assignee of Wm. C. Hays, under land warrant No. 157, and the corrected field notes were the same as those made by the original surveyor, except that the third line was called to be 1860 varas in length instead of 1982 varas, as in the original field notes. Patent was issued upon the land in the name of the heirs of W. C. Hays October 14, 1865.

On the 13th day of November, 1832, the State of Coahuila and Texas granted to Willis Avery a league of land as a colonist in Austin's Little Colony, which grant was surveyed upon the line between Austin's Little Colony and Robinson's Colony lying partly in each and was therefore void to the extent that it lay in Robinson's Colony. In the year 1854 the Legislature of the State of Texas enacted the following law: "That the headrights of land granted to colonists before the 13th day of November, 1835, and lying and being intersected or crossed by the boundary

line of Robinson's Colony and Austin's Little Colony, and being part in one of said colonies and part in the other, are hereby declared to be as valid as if such headrights were lying and being wholly within the colony where such headright grants were issued, provided that nothing herein contained shall be so construed as to affect the rights of third parties." (Gen'l Laws, 1854, p. 29.)

The Hays certificate was located upon that portion or the Willis Avery grant which was in Robinson's Colony. On the 10th day of February, 1852, a statute was enacted by the Legislature to the effect that the field notes of all surveys made previous to the passage of that act should be made out and returned in the manner required by law to the General Land Office on or before the 31st day of August, 1853, or become null and void, and that such surveys should become vacant land and be subject to be relocated and surveyed as in other cases by any person holding a genuine land certificate or other legal evidence of claim to land.

There is no question made in this case as to the title of either party to the suit under the respective grants above named. We therefore assume that the plaintiffs had a regular chain of transfer under the W. C. Hays grant and that the defendants had a regular chain of title under the Willis Avery grant.

The court charged the jury to find for the defendant, which was accordingly done, and judgment entered for the defendants below, which judgment was affirmed by the Court of Civil Appeals and is now before us for revision upon this writ of error.

Prior to the passage of the act of February 10, 1852, the time within which the field notes of surveys should be returned to the General Land Office was not limited. The law, however, prior to that time required the surveyor to certify all field notes to the commissioner of the General Land Office. (Pasch. Dig., art. 4522.)

The field notes of the Hays survey were dated February 15, 1847, and certified by the surveyor, as required by law, for return to the General Land Office. Under the act of February 10, 1852, it was the duty of the surveyor, if the field notes had not been returned before that time, to return them prior to the 31st day of August, 1853, and these field notes, properly certified, being found in the General Land Office, it will be presumed that they were returned by the surveyor within the time prescribed by the law. In support of this is the further presumption that the Commissioner of the General Land Office would not have received these field notes into his office if sent by the surveyor after the date prescribed, because under that law the survey would have become forfeited and he would have had no authority to receive the field notes of a forfeited survey. These presumptions rest upon the familiar rule of law that all official acts of public officers are presumed to have been done at the time and in a manner required by law.

. When the Commissioner of the General Land Office issued the patent upon the survey made in 1847 under the Hays certificate, it was necessary for him to ascertain the fact that the field notes of this survey had been

returned to his office prior to August 31, 1853. If they had not been so returned, he had no power to issue the patent because, as before stated, the survey would have been forfeited. The Commissioner having issued the patent upon the survey made under the Hays certificate, it will be presumed that the facts existed which authorized him to do so. (Miller v. Moss, 65 Texas, 179; Deen v. Wills, 21 Texas, 642; Kimbro v. Hamilton, 28 Texas, 560; Johnson v. Smith, 21 Texas, 722.

The law forbade a patent to issue upon a certificate which had not been recommended or confirmed in some legal manner. In Deen v. Wills, supra, the patent was attacked upon the ground that the certificate upon which it was issued had not been confirmed by a suit in the county in which it was issued. The court say: "The patent is prima facie evidence that the genuineness of the certificate had been duly established and that it was valid from its date. It devolved upon the plaintiff to prove that it had not been established in any of the modes known to the law."

The plaintiffs having shown a valid location and survey of the land prior to the enactment of the law of 1854, under which the defendants claim, with a patent, although issued subsequently to the enactment of that law, established a right to the land which entitled them to recover unless the evidence showed that the original field notes of the Hays survey were not returned before August 31, 1853.

The only evidence produced upon the trial which tended to show that the field notes of the Hays survey were not returned to the General Land Office within the time required is an endorsement upon the original field notes of that survey, which are found in the land office, as follows: "Canceled by me June 28, 1859—(Signed)—W. K. Duerson, Co. S. W. County." Also, "Corrected and resurveyed July 17, 1858. W. K. Duerson, Deputy Surveyor M. District." It is said that this endorsement proved that the certificate was in the possession of the county surveyor at the date he made the endorsement thereon, and from this it is concluded that the field notes upon which the endorsement was made were not returned to the General Land Office as required by law. Is the fact that the surveyor had possession of the field notes in 1859 inconsistent with the fact that the field notes were in the General Land Office at the proper time?

We have found no statute prior to the act of October 24, 1871 (Pasch. Dig., art. 7091), regulating the correction of field notes of surveys when found to be incorrect; but a well known practice obtained in the General Land Office by which the Comissioner returned incorrect field notes to the surveyor of the county or land district for correction. This practice has been recognized by this court in a number of cases. See McKinney v. Grassmeyer, 51 Texas, 376.

In the case of Wyllie v. Wynne, 26 Texas, 45, this court in speaking of the practice of holding lands on file and location without survey, said: "It was the practice of the country to a considerable extent and one which was recognized by the courts, to hold by files without actual survey; and we believe this practice was in conformity with the law."

In Chadoin v. Magee, 20 Texas, 482, the court said: "In respect to the question of title, it will suffice for the present to observe that it appears by the defendant's answer that he was admitted as a colonist in the colony of Austin and Williams, and was permitted, as we historically know the practice was, to select land already surveyed, and it only remained for the Commissioner to issue the title, when the land office was closed by the Act of the Consultation."

In the case of Johnson v. Eldridge, 49 Texas, 524, the question of a custom of the general land office was under consideration, and the court used this language: "While, as has been previously said, the mere opinion or conclusion of the Commissioner as to the result of a particular act will not relieve a party from the consequences of such act when plainly declared by law, still it is not to be denied that rules which are prescribed by him, and by which claimants are guided in getting patents, in the absence of direct statutory regulations, are entitled to the highest consideration, if, indeed, they are not to have conclusive effect."

Under the authority of the decisions above quoted, we feel called upon to recognize the existence of a custom which prevailed so extensively, under the direction of the Commissioner of the General Land Office, in regard to the correction of field notes, which custom so largely affects the property interests and rights of the people; and, as said in the case before cited, we believe that it was in accordance with the law: there was no regulation prescribed by statute, and it was a necessary power to be exercised by the Commissioner in order that patents issued might contain correct descriptions of the land granted.

The Surveyor of Williamson County corrected the field notes of the Hays survey in 1858, under the direction of the Commissioner of the Land Office, in pursuance of the custom before stated. We think that this correction establishes that the original field notes, on which the endorsements were made, were sent from the General Land Office to the county Surveyor for the purpose of being corrected. The survey was not made by the county Surveyor of Williamson County; (the county of Williamson was not organized at the time the original survey was made); he would not be authorized to make the correction in the field notes of a survey made by another except under the direction of the Commissioner of the General Land Office. Nor would these field notes, certified by the Surveyor of Milam land district, probably be found in the possession of the Surveyor of Williamson County, even if not returned to the General Land Office. The making of this correction implies that the survey had not at that time been forfeited, for if it had been the Commissioner of the Land Office could not lawfully have directed the Surveyor to make the correction, nor could the Surveyor have lawfully made it. After making the correction, the county Surveyor of Williamson County returned the original field notes to the General Land Office, which shows that he had received them from that office, else why should he have sent them there after having forwarded a corrected set of field notes; and if they had never been in the General Land Office, the Commissioner would not have

been authorized to receive them at that time, beacuse the survey would then have been void. The endorsement of cancellation written upon the original field notes by the surveyor was made without authority of law, and proved nothing more than that he had possession of the paper at that time. We think that possession by the surveyor Duerson is not inconsistent with the fact that the field notes were properly returned to the General Land Office, but rather tends to support that conclusion by the presumptions which grow out of the acts of the Commissioner of the Land Office and the Surveyor in connection therewith. At most, the possession of the field notes by the Surveyor in 1859 was only a circumstance which might go to the jury upon the issue as to whether the field notes had been returned or not, but could not be so conclusive as to overcome all of the presumptions arising from the acts of the Commissioner of the Land Office in connection therewith and justify the trial court in holding, as a matter of law, that the field notes of the Hays survey had not been returned as required by law, and that the survey had been forfeited. A forfeiture of rights of property is not favored by the courts, and laws will be construed to prevent rather than to cause such forfeiture. (Hill v. Kerr, 78 Texas, 217.)

No presumption can arise out of the passage of the act of 1854, as regards the return of the field notes of the Hays survey, because the passage of that act involved the determination of no question of fact relative thereto. This act applied to a class of grants of land to which paramount rights might or might not exist. Whether or not the law would have the effect to validate the title of any one of those grantees depended upon the existence or non-existence of prior rights, which was to be determined, in the first instance, by the Commissioner of the General Land Office, if locations had been made thereon and surveyed. The issuing of the patent on the Hays survey in this case required the Commissioner to determine that its location was prior to 1854, that it was a valid and subsisting location at the time the act of 1854 was passed, and from the fact that the patent was issued it will be presumed that all facts necessary to authorize its issuance then existed.

We conclude that the plaintiffs showed a valid, subsisting, equitable' right to the land at the date of the act of 1854, and that the burden was upon the defendants to show the forfeiture of that right, if such forfeiture existed. (O'Neal v. Manning, 48 Texas, 403.)

The District Court erred in directing the jury to find for the defendants in this case, and the Court of Civil Appeals erred in not sustaining the assignment of error based thereon, for which errors the judgments of both courts are reversed and the cause remanded.

*Reversed and remanded.*