**RUDCO OIL & GAS CO. v. LEMASTERS.**

No. 2062.

Court of Civil Appeals of Texas. Eastland.

Dec. 6, 1940.

Rehearing Denied Jan. 10, 1941.

Frank Sparks, of Eastland, for plaintiff in error.

Allen D. Dabney, of Eastland, for defendant in error.

FUNDERBURK, Justice.

This suit was brought by W. S. Lemasters against Rudco Oil and Gas Company to recover damages to a 48-acre tract of land near Desdemona, Texas, alleged to have resulted from negligence of the defendant in that the defendant "failed to impound, channel, take care of and drain into well built and regulated slush pits and traps of sufficient capacity so as would have and could have arrested the overflow" of certain "waste oil and waste material" from defendant's gasoline plant on nearby premises. A particular further allegation was to the effect that defendant had, without the consent of plaintiff, constructed three pipe lines over part of plaintiff's land "with cut outs for drips and wash outs for gasoline and oily substances" which were caused to be blown "discharging into the main water streams hundreds of gallons of waste and drip oil and gasoline * * * permitted to flow down the hillside and natural stream on and across plaintiff's land and into tank of water" with stated damaging consequences. The alleged damages consisted of the total destruction of the value of six acres of the land, the impairment to the extent of one-half of the value of the rest of the land, and the destruction of the usefulness of a lake of water on the land, aggregating the sum of $715.

The defendant, in addition to other defensive matters, pleaded that if plaintiff had suffered damages of the nature alleged "companies and persons other than this defendant were responsible for such damages, if any, and caused and contributed to cause the same."

Upon trial by jury, a verdict was returned for the plaintiff, awarding dam-

ages in the sum of $250. From the judgment in accordance with said verdict, defendant seeks a review of the case by writ of error upon petition and bond and waiver of citation in error and service thereof, filed January 1, 1940.

For convenience the plaintiff-in-error will be referred to as defendant, and defendant-in-error as plaintiff, the same as in the trial court.

The record suggests a question of the jurisdiction of this court not urged by plaintiff, and, therefore, not dealt with in the briefs of either party. The question is whether this court has jurisdiction to review the case upon writ of error not perfected before January 1, 1940. According to the record, defendant, by its attorney, participated in the trial of the case; judgment was rendered October 9, 1939, and petition for writ of error, bond and a waiver of the issuance and service of citation in error, were all filed January 1, 1940.

Under a recent decision by the Waco Court of Civil Appeals, in United Employers Cas. Co. v. Skinner, 141 S.W.2d 955, subsequently re-affirmed by the same court, in United Employers Cas. Co. v. McGee, 143 S.W.2d 653, and followed by the Amarillo Court of Civil Appeals, in Blankenship v. Stallings, 141 S.W.2d 957, this court is without jurisdiction to review this case. The same question came before this court upon a motion to dismiss a writ of error in Edith Copus et al. v. J. H. Chorn et al., and by a majority and a minority opinion rendered November 15, 1940, the motion to dismiss was denied, the majority opinion sustaining the jurisdiction. Copus v. Chorn, 145 S.W.2d 958.

■ The Skinner case was decided under the assumption that the act of the Legislature (Acts 1939, p. 59, c. 2, Vernon's Ann.Civ.St. art. 2249a), upon which the question arises went into effect in June, 1939, by reason of an emergency clause and passage of the act by the necessary vote. This assumption, it is believed, was incorrect and being material was sufficient of itself to account for the action of the Supreme Court in refusing a writ of error in the case. According to a note of the Secretary of State accompanying the publication of the acts of the Legislature, said act was passed over the Governor's veto by a vote in the Senate of 17 to 8. The Texas Senate consists of 31 members, and, according to section 39,

Art. 3 of the Constitution, Vernon's Ann. St., a bill may be passed as an emergency act only if same be voted by "two-thirds of all the members elected to each House." It, therefore, appears that 17 is not two-thirds of the 31 members elected to the Senate, and the act did not become effective as an emergency measure.

■ The act, if it had contained no provision to the contrary, would, under said section of the Constitution, have become effective ninety days after adjournment, or about September 21, 1939. However, section 3 provides: "that this act shall take effect from and after January 1, 1940." The law did not take effect, therefore, ninety days after adjournment, unless the Legislature was without power to enact that it take effect at a specified later date. It would be arguing a self-evident proposition to say that it could not take effect on or about September 21, 1939, and yet not take effect until "from and after January 1, 1940." We assume it has not been decided in this State that the Legislature is without power to make a statute effective at a date later than ninety days after adjournment of the Legislature. We shall, therefore, here assume, without deciding, that the Legislature does have that power, and has exercised it in the act in question.

■ In order fully to appreciate the effect of the act under consideration, it is well to consider the pre-existing statutory provisions affected by said act. Such provisions are so numerous that to state the substance or effect of more than a few of them would unreasonably extend this opinion. Some of said provisions applied exclusively to procedure for the review of cases by writ of error. Of these may be mentioned R.S.1925, Arts. 2255 to 2264, inclusive. Others of said provisions expressly or by reference, and in some cases with special variations, applied alike to appeal and writ of error. Of these may be mentioned R.S.1925, Arts. 1839 to 1850, inclusive, 2241, 2246, 2249, 2252 and 2265 to 2285, inclusive, Vernon's Ann.Civ.St. Arts. 1839 to 1850, inclusive, 2241, 2246, 2249, 2252 and 2265 to 2285, inclusive.

Said Art. 2246 (as relating to writ of error) provided, in effect, that the plaintiff-in-error "shall have fifty (50) days after * * * perfection of writ of error, within which to prepare and file his statement of facts," etc. Article 2249 (as to writ of error) provided: "Writ of

Error may be taken to the Court of Civil Appeals from every final judgment" etc. (followed by limitations and exceptions applying equally to appeals). Article 2259, provided to the effect that when petition for writ of error and bond be filed the clerk should issue citations to defendants, in error. Article 2260 prescribed the requisites of such citations. Article 2261 provided for the manner of service and returns thereof. Article 2267 (as to writs of error) provided: "when the bond, or affidavit in lieu thereof, provided for in the two preceding articles, has been filed and the previous requirements of this chapter have been complied with, the * * * writ of error * * * shall be held to be perfected." Article 2270 gave a plaintiff in error the right to suspend execution of the judgment by filing supersedeas bond. Article 2278 imposed upon the clerk the duty after writ of error had been, perfected to prepare, upon application therefor, a transcript. Article 1839 (as previously amended) insofar as applicable, to a plaintiff in error provided that " * * * in * * * writ of error the * * * plaintiff in error shall file the transcript, and statement of facts with the Clerk of the Court of Civil Appeals within sixty (60) days from * * * service of the, writ of error," etc. Article 1844 provided: "The * * * plaintiff in error need not file assignments of error with the Clerk, of the Court below but he may embody in his brief in the appellate court all assignments of error," etc.

Each and every one of these statutes and others not mentioned, insofar as they related to review by writ of error—which all of them did—were repealed to the extent that they applied to any "party who participates either in person or by his attorney in the actual trial of the case in the trial court." Such repeal did not result merely from implication, but expressly, the language of the act being "all laws and parts of laws, insofar as they conflict with this act, are repealed."

■■ When did such repeal become effective? Was it on or about September 21, 1939,—ninety days after adjournment of the Legislature? Or, was it "from and after January 1, 1940," as expressly provided in the act? Whatever the true answer, there would seem to be no room for any difference of opinion that such repeal became effective simultaneously with the cessation of the right of parties who should participate in the trial of their cases to have same reviewed by writ of error. Until the act taking away such right went into effect, there was no conflict of the act with any law or part of a law, and, therefore, no means of identifying laws or parts of laws in conflict therewith. There was, until such time, no subject matter upon which the provision for repeal could operate.

If the act went into effect "from and after January 1, 1940", as it plainly says, then undoubtedly that is the time when the repeal of conflicting laws and parts of laws became effective. If such repeal became effective from and after January 1, 1940, then certainly up to that time there was no change in any of the laws. Up to that time any party to an appealable suit had the right and option expressly granted by such laws to a review by writ of error. Such right existed as to a suit tried on December 31, 1939, just the same as to a suit tried at any time prior thereto. This is just as certainly and necessarily true as that prior to January 1, 1940, there had been no repeal of the statutes authorizing such method of review.

On the other hand, if such repeal became effective from and after September 21, 1939, then in no case tried after that time did a party who participated in the trial have the right to have the case reviewed by writ of error. All laws giving that right and prescribing the procedure to be followed having been repealed the right or remedy of review by writ of error had simply ceased to exist. That result would render the fact immaterial whether writ of error was perfected before or after January 1, 1940.

The Skinner decision, if we understand it, does not hold that any law or part of a law was repealed before January 1, 1940. This is evident from the fact that it does hold that the right of review by writ of error continued up to said time. Such a right, dependent as it is upon statutes, could not exist if those statutes had previously been repealed, or, in other words, could not exist after the repeal of such statutes.

In the Skinner case the act in question has been given a construction simply to the effect that after January 1, 1940, the right to review by writ of error in cases to which the act purports to apply has been abolished—a proposition not to be questioned—and further that up to Jan-

uary 1, 1940, the right to review by writ of error continued, but the time in which to perfect writ of error has been progressively shortened from six months, or more, to the vanishing point on December 31, 1939. It is implicit in the decision that in a case, for example, in which judgment is rendered ten minutes before midnight on December 31, 1939, a dissatisfied party who participated in the trial of the case had the right to review by writ of error, but his time, in which to perfect writ of error, had been, in effect, cut down to ten minutes. In our view, if it should be conceded that the act requires such a construction, then it would be unconstitutional under the authority of the following decisions: Odum v. Garner, 86 Tex. 374, 25 S.W. 18; Union Assur. Society v. Equitable Trust Co., 122 Tex. 293, 58 S.W. 2d 58; Hunter v. Moore, 122 Tex. 583, 62 S.W.2d 97; Wright v. Hardie & Co., 88 Tex. 653, 32 S.W. 885; Phil H. Pierce Co. v. Watkins, 114 Tex. 153, 263 S.W. 905.

The act is susceptible to a construction which will involve no conflict with constitutional restrictions. Ordinarily, at least, statutes speak from the date they become effective, and operate prospectively. As between a construction which would render the act unconstitutional and one which would give it the usual effect of prospective operation and at the same time be free from constitutional objection, it is not unreasonable, we think, to adopt a construction to the effect that the act is applicable to cases tried "from and after January 1, 1940." Under that construction the simple test of whether the statute applies is the fact of the participation, or not, of a party in the trial of the case. Under this view the emergency clause will simply be treated as a nullity because (if for no other reason) it failed of the necessary vote to give it any effect. If it be answered that under such interpretation no reason appears why the Legislature should have provided for a postponed effective date of the act, it may be replied that all the reasons influencing legislative action do not necessarily have to appear. Besides, the courts would be hard put to assign valid reasons for a great deal of legislative action.

Because of the impossibility of such a thing, the Legislature could not make an act effective only from and after two different dates. If the act became effective from and after the earlier date, then, although it might be in effect from and after the later date, that manifestly would not be the time it became effective. If the act became effective from and after the later date, then, of course, the time it became effective was not the earlier date.

No principle of notice, it would seem, can be material, or here involved. Let it be granted that the passage of the act was full notice of its provisions from and after the time of such passage. Would simple notice that at a future date a law will be changed be notice of any change of the law before that time? Rather, would not such notice be to the effect that up to such future date the existing law would remain unchanged? Specifically applied, would not the notice be that up to the last minute of the time a party who had participated in the trial of his own case under the full authority of the unchanged law have a right to review of his case by writ of error? The Skinner decision seems to imply a construction of the act in question to the effect that the laws authorizing the review of cases by writ of error were in no respects repealed absolutely before January 1, 1940, but notice of such future repeal afforded by the passage of the act so operated as to attach a condition to the unrepealed laws. In other words, it operated to convert the absolute provisions of such law to provisions operative conditionally and contingently. But we submit as an axiomatic proposition that laws operating absolutely cannot be made to operate only conditionally except by an act of the Legislature effecting some character or degree of the repeal of such laws.

The logic of the proposition is irresistible, it seems to us, that the act in question neither by the provisions in the body thereof, nor the caption by which its provisions are limited, carries any character of notice that any law is to any extent or degree repealed until from and after January 1, 1940.

Without further extension of the discussion upon this general phase of the case we refer to said opinions in Copus v. Chorn, supra.

In the last-named opinions, as well as in the preceding part of this opinion, we have construed the Skinner decision as holding that the expiration of the time in which to perfect writ of error was December 31, 1939. If it should be granted that the Skinner decision is correct in principle, it is nevertheless true that it was immaterial under the facts of that case whether such time

expired with December 31, 1939, or with January 1, 1940. Therefore, anything in the opinion which could be construed as making a distinction between said dates was necessarily dicta.

■ In the present case, writ of error was perfected on January 1, 1940. The law, by express provision, went into effect "from and after January 1, 1940." It is the general rule that when a right is granted, or duty imposed "from and/or after" a specified date, the first day is excluded. Hill v; Kerr, 78 Tex. 213, 14 S.W. 566; Halbert v. San Saba, etc., Ass'n, 89 Tex. 230, 232, 34 S.W. 639, 49 L.R.A. 193; Lubbock v; Cook, 49 Tex. 96; Dowell v. Vinton, 1 White & W. Civ.Cas.Ct.App. § 327, pages 140, 142; Eyl v. State, 37 Tex.Civ.App. 297, 84 S.W. 607.

This rule is especially applicable where the question of construction relates to the preservation of a right or exclusion of a forfeiture. O'Connor v. Towns, 1 Tex, 107; Winston v. State, 32 Tex.Cr.R. 59, 22 S.W. 138; Hill v. Kerr, supra; Shepard v. Avery, 89 Tex. 301, 34 S.W. 440. "In computing time 'from' or 'after' a specified day or event", says the text of Tex.Jur., "the general rule is to exclude the first day and to include the last." 41 Tex.Jur. p. 347, sec. 7. Here we are not concerned with two dates but one "from and after" which an act of the Legislature is in effect.

■ It is a settled general rule that fractions of a day are not considered in the computation of time. 41 Tex.Jur. p. 345, sec. 5. The constitutional provision against retroactive laws would in many. cases be violated unless a statute providing a particular date, from and after which it was to be in force, should be construed to exclude the first day. For example, suppose such a statute affecting substantive rights be passed with an emergency clause at the closing hours of a particular day. It simply could not be in effect so as to include the day of its passage without having some retroactive effect. Therefore, we think that in any event this court has jurisdiction of this case.

■ Upon the merits of the case defendant contends in the first place that the court erred in refusing a peremptory instruction in its favor on the ground that there was no evidence to show what part. of the oil, waste material, drip oil or gasoline was released by defendant on plaintiff's property, and what part was released by other persons; and that there was further no evidence to show that the oil, gasoline, waste material and drip gasoline was of such a character and content as would inflict the damage to the plaintiff's property of which complaint is made.

There being, as we think, evidence to show injuries to plaintiff's land, and lake of water, resulting from alleged negligence of defendant, the court could not properly instruct a verdict upon the ground here urged, unless it could be said there was conclusive evidence to the effect that such injuries resulted in part from the acts or omissions of independent third persons. If that were the case, then the burden of proceeding would have been on the plaintiff to show that some definite part of the injury and damages resulted from the negligence of the defendant, in the absence of which being necessary to enable the jury to determine the amount, it would have been the duty of the court to instruct a verdict for the defendant, or perhaps, limit the recovery to nominal damages. (As to the latter alternative we do not here undertake to speak authoritatively).

If the injuries and damages with which the plaintiff sought to charge the defendant were caused in some indefinite part by third parties acting independently of the defendant that was a matter of defense. If the evidence established the fact conclusively the plaintiff could not recover, unless he established the amount of damages caused by the negligence of defendant and excluding that caused by third parties. If the evidence failed to establish conclusively that defendant alone caused the injuries, or that such third persons caused all, or part, of the injuries, but only raised issues of such facts, then the burden rested upon defendant to procure findings that the injuries or part of the same were caused by third persons. If the evidence raised such issues and the court failed to submit them the error would be waived unless defendant requested their submission. According to the evidence set out in the briefs of the parties, we think the evidence only raised issues of such facts, and, there being evidence to support a finding that the injuries and damages resulted alone from the negligence of the defendant, the court, under the circumstances, did not err in refusing the defendant's request for an instructed verdict.

■ As to the point that the court should have instructed a verdict because "there was no evidence to show that the oil,

gasoline, waste material and drip oil was of such character and content as would inflict the damage to plaintiff's property complained of" there certainly was evidence tending to show that damage was inflicted from such cause which necessarily includes evidence of the damaging characteristics of such substances.

Besides, we think we must take judicial knowledge that oil, waste material (from a refinery), drip oil or gasoline may pollute water used for domestic purposes and damage land.

It is next contended by a number of propositions, each referable to a particular special issue, that certain of the special issues were multifarious or duplicitous, and the court erred in giving them over objections pointing out such defects. Special issue No. 5 was: "Do you find from a preponderance of the evidence that the water in plaintiff's tank on his land became polluted or contaminated by waste oil, waste material, drip oil or gasoline flowing therein on and after January 1, 1937?" Special issue No. 6, submitted conditionally upon an affirmative answer to issue No. 5, was: "Do you find from a preponderance of the evidence that defendant permitted said waste oil, waste material, drip oil or gasoline, if any, to flow from defendant's gasoline plant and (or) pipeline owned or controlled by it, into plaintiff's said tank?" Issue No. 6 was followed with special issue No. 7 inquiring as to whether the subject matter of the former was negligence; special issue No. 8 inquiring as to whether such negligence was a proximate cause of the injuries, and special issue No. 9 inquiring as to total damage, if any, from such cause.

It is apparent from the statement of the case that the alleged cause of action comprised different grounds of recovery. For example, one (or more) ground of recovery related to defendant's gasoline plant situated upon other land than that of plaintiff. Another (or others) related to defendant's pipelines allegedly "without the consent of plaintiff constructed * * * over part of plaintiff's land." The negligence specifically charged to defendant re-

lating to its gasoline plant was that it "failed to impound, channel, take care of and drain into well built and regulated slush pits and traps of sufficient capacity so as would have and could have arrested the overflow" of certain "waste oil and waste material together with the used water mixed and mingled with oily substances." With reference to the three pipelines the specific negligence alleged (or rather more accurately willful trespass) was that the pipelines were laid "with cut outs for drips and wash outs for gasoline and oily substances [and] * * * defendant would constantly and continuously * * * caused [cause] said lines to be blown discharging into the main water streams hundreds of gallons of waste and drip oil and gasoline."

It must be admitted that it is difficult, if not impossible, to identify the several issues submitted with the issues pleaded; but it does appear certainly, we think, that each of said issues sought to elicit findings regarding the subject matter of issues which, as pleaded, were elements of different grounds of recovery. We think it deducible from the authorities as a sound proposition of law that where an alleged cause of action consists of more than one ground of recovery, the issues constituting elements in different grounds of recovery may not be combined and submitted as a single issue over timely objection that same is duplicitous and multifarious.

Not as directly supporting the proposition just stated, but the general conclusion that issues like those here involved are duplicitous or multifarious, see the most recent case of Empire Gas & Fuel Co. v. Muegge, Tex.Com.App., 143 S.W.2d 763.

There are decisions, it must be admitted, which are a little difficult to distinguish, but in view of the above most recent holding of the Commission of Appeals, approved by the Supreme Court, we think it would serve no useful purpose to discuss them. It is sufficient to say that we think the above proposition is applicable to this case and is in conflict with no well-considered decision.

It is, therefore, our conclusion that the judgment of the court below should be reversed and the cause remanded, which is accordingly so ordered.