

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00107-CV

_____

KRAIG PEPPER, D.O., Appellant

V.

JUAQUAETTA WILSON, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-311119-19

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In two issues, Appellant Kraig Pepper, D.O. (the Doctor) challenges the trial court's denial of his motion to dismiss a health care liability claim brought by Appellee Juaquaetta Wilson. The Doctor predicates his first issue on Ms. Wilson's failure to timely serve an expert report as required by the Texas Medical Liability Act (MLA). Though Ms. Wilson's expert report was not served as required by the MLA's deadline, the trial court—when it denied the motion to dismiss—implicitly granted an extension to serve the report under the authority of the Texas Supreme Court's Fortieth Emergency Order Regarding the COVID-19 State of Disaster.[1] The Doctor's second issue contends that even if Ms. Wilson's expert report had been timely served, it was inadequate because it failed to describe the standard of care that applied to the Doctor's treatment of Ms. Wilson. The Doctor, however, raised this ground in his objections to the report (not in his motion to dismiss), and those objections were disposed of by the trial court in a separate order, which the Doctor did not list in his notice of appeal. We therefore lack jurisdiction to address the Doctor's second issue. Based on our disposition of his first issue, we affirm the trial court's order denying the Doctor's motion to dismiss.

---

[1] *See generally Fortieth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021).

## II. Factual and Procedural Background

Ms. Wilson filed a petition on September 12, 2019, that alleged the following facts:

9. [Ms. Wilson] first presented to [the Doctor's] office for advice, care[,] and treatment of left knee pain on March 15, 2017. [The Doctor] did not see her that day. She discussed her symptoms and situation with his physician[']s assistant. No physical or conservative therapy was discussed or ordered.

10. She returned to [the Doctor's] office as instructed on April 17, 2017, following a CT scan. [The Doctor] did not see her that day. She was again seen by a physician's assistant.

11. She was first personally seen and examined by [the Doctor] on May 16, 2017. He recommended total replacement of her left knee joint. There had been no trial of conservative treatment as of that date. There was no trial of conservative treatment preoperatively.

12. [Ms. Wilson] had [undergone] surgery several years earlier for left knee problems. An orthopedic surgeon in Chicago placed screws across her proximal left tibia during that surgery. [The Doctor] knew or should have known about the presence of the screws.

13. [The Doctor] took Plaintiff to the operating room on June 30, 2017, and performed left total knee arthroplasty (replacement of the joint). Ms. Wilson was then 43 years old. During the procedure, when inserting the tibial component, [the Doctor] bent one or more of the previously placed screws. He did not intend to do so[] and did not report doing so in [h]is operative note or to the patient in the hospital after surgery.

14. [Ms. Wilson] remained under [the Doctor's] continued care. She was seen at his office in July and August of 2017. Her knee pain and problems persisted. She participated in physical therapy and home exercise as recommended. She appeared for appointments when set.

15. On September 1, 2017, [the Doctor] took the patient back to the operating room and performed manipulation under anesthesia of her

left knee. She remained under [the Doctor's] care until September 12, 2017.

16. Subsequently, the artificial knee placed by [the Doctor] was removed by another surgeon. It has now been replaced. Long[-]term prognosis is uncertain.

The petition then alleged that the following were acts of negligence by the Doctor: (1) "performing knee replacement surgery on a relatively young patient that was not indicated"; (2) "performing knee replacement without a trial of conservative therapy"; (3) "bending a previously placed screw during the surgery"; and (4) "failing to behave as would a reasonable and prudent orthopedic surgeon under the circumstances." The parties agree that Ms. Wilson filed a health care liability claim against the Doctor.

The Doctor answered the suit. On April 21, 2020, because 120 days had passed after the filing of his answer and because Ms. Wilson had not filed an expert report as required by the MLA, the Doctor moved to dismiss the suit. What followed was a year-and-a-half-long period of exchanges between the parties during which (1) Ms. Wilson claimed that her deadline to serve an expert report should be extended because of emergency orders issued by the Texas Supreme Court to deal with the COVID-19 pandemic and (2) the Doctor responded that Ms. Wilson was not entitled to that relief and that her suit should be dismissed. The chronology of these events runs as follows:

**May 6, 2020**      In response to the Doctor's motion to dismiss, Ms. Wilson filed a motion to enlarge the report deadline invoking the Twelfth Emergency

4

Order's provision that extended deadlines "for the filing or service of any civil case that falls on a day between March 13, 2020, and June 1, 2020, . . . until July 15, 2020."[2] Ms. Wilson sought to enlarge the time to file the report "up to and including July 15, 2020."

**August 3, 2020**     On the date set for a hearing on the Doctor's motion to dismiss, Ms. Wilson filed a supplemental motion to enlarge the report deadline that invoked the Twenty-First Emergency Order and its provision suspending filing and service deadlines until September 15, 2020.[3]  This motion attached proof that Ms. Wilson's counsel had experienced a recent illness and had tested positive for COVID.  Ms. Wilson sought an extension of time to file her expert report until September 15, 2020.  Though no order appears in the record, the Doctor's brief states that the trial court orally granted the requested extension. No report was filed by Ms. Wilson by the time of the extended deadline.

**October 1, 2021**     Ms. Wilson filed a second supplemental motion to enlarge the time to file her expert report.  This motion attached a two-paragraph expert report and the curriculum vitae of the expert.  The motion recited, "As good cause for the modification, please see the attached declaration of the undersigned that explains how his acute COVID experience and continuing

---

[2]*See Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 144, 145 (Tex. 2020).

[3]*See Twenty-First Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 128, 129 (Tex. 2020).

5

health problems (kidney and liver damage, related complications, potential need for liver transplantation, malaise, fatigue[,] and 'brain fog') manifested." This motion invoked the Fortieth Emergency Order permitting courts to "modify or suspend any and all deadlines and procedures . . . for a stated period ending no later than October 1, 2021."[4]

**Post October 1, 2021** The Doctor filed a reply to Ms. Wilson's second supplemental motion to enlarge in which the Doctor argued primarily that

> [Ms. Wilson's] Motion to Enlarge Time to File Expert Report should be denied because the [c]ourt's authority under the Texas Supreme Court's Fortieth Emergency Order Regarding the COV[I]D-19 State of Disaster ("40th Emergency Order") to modify or suspend [Ms. Wilson's] deadline to serve the required expert report expired on **October 1, 2021**. Since [Ms. Wilson] failed to obtain a ruling or a signed order granting the Motion to Enlarge Time to File Expert Report prior to the expiration of 40th Emergency Order, this Honorable Court must grant [the Doctor's] Motion to Dismiss pursuant to Texas Civil Practice & Remedies Code §[ ]74.351(b).

The reply also noted that Ms. Wilson had failed to serve a report in accordance with the trial court's prior verbal extension. Finally, the reply argued that Ms. Wilson had failed to establish good cause for her delay in serving a report.

Separately, the Doctor also filed an objection to Ms. Wilson's expert report, arguing that it was both untimely and failed to meet the requirements of the MLA.

---

[4] *See generally Fortieth Emergency Order*, 629 S.W.3d at 912.

Ms. Wilson responded to the Doctor's filings by arguing that the Fortieth Emergency Order authorized the extension that she had requested and that her expert report constituted a good-faith effort to comply with the MLA. Among other relief, she asked "alternatively [to] allow a 30[-]day extension within which to file a supplemental report."  Later, Ms. Wilson filed an additional reply arguing that the expert report complied with the MLA and that the emergency orders issued by the Texas Supreme Court gave the trial court discretion to modify the deadline to serve an expert report.  This pleading also summarized the health problems that Ms. Wilson's counsel had experienced.

**January 11, 2022**  The trial court conducted a non-evidentiary hearing. During the hearing, the trial court stated its conclusion regarding why the Fortieth Emergency Order authorized an extension of the filing deadline for the expert report:

> The [c]ourt recognizes that the [Texas] Supreme Court allowed us to enlarge the time -- or to recognize that October 1st deadline.
>
> I think -- had it not been filed by October 1st, I think the [c]ourt would have no ability to do that, but, fortunately for [Ms. Wilson], it was filed on October 1st.

The trial court signed orders denying both the Doctor's motion to dismiss and his objections to the expert report.

The Doctor filed a notice of appeal with respect to the order denying his motion to dismiss.

7

## III. Analysis

**A.**    **We conclude that the trial court had the power under the Fortieth Emergency Order to implicitly extend the deadline for Ms. Wilson to file and serve her expert report.**

The Doctor argues that Ms. Wilson served her expert report too late because by the time that she had done so, the last emergency order allowing a trial court to modify and suspend deadlines had lapsed. We disagree. Ms. Wilson served her expert report on the last possible day that the emergency orders gave the trial court the power to modify and suspend the deadline and on the same day sought relief to modify and extend the deadline. Though she did so by the barest of margins, Ms. Wilson timely invoked the deadline-extension power of the trial court.

**1.**    **The MLA requires a claimant to file and serve an expert report in support of a health care liability claim.**

As we have noted, the parties agree that Ms. Wilson's claims constitute a health care liability claim as that term is defined by the MLA, and thus the procedural requirements of that Act govern the claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (setting forth the MLA's definition of "health care liability claim"). Both the requirement to file an expert report and the consequences of not timely filing and serving an expert report are clear in normal circumstances. Under the MLA, a claimant must "not later than the 120th day after the date each defendant's original answer is filed . . . serve on that party or the party's attorney one or more expert reports . . . for each physician or health care provider against whom a liability claim is

8

asserted." *Id.* § 74.351(a). In turn, the consequence of not serving the report is that the trial court

> on the motion of the affected physician or health care provider, shall . . . enter an order that[] (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider[] and (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

*Id.* § 74.351(b).

The MLA contains a provision allowing for an extension to serve an expert report. *Id.* § 74.351(c) (stating that "[i]f an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency"). But this provision allows the extension only to correct a deficiency in a filed report and does not create the power to extend the time for initially serving a report. As the Fourteenth Court of Appeals has noted,

> Several courts of appeals, including ours, have interpreted [S]ection 74.351(c) to mean that the thirty-day extension applies only when an initial expert report is timely filed. *See* [*Estate of Regis ex rel.*] *McWashington* [*v. Harris Cnty. Hosp. Dist.*], 208 S.W.3d [64,] 67 [(Tex. App.—Houston [14th Dist.] 2006, no pet.)] ("Although [S]ection 74.351(c) gives a court discretion to grant 30 days to amend a deficient expert report, this section applies only when an initial report is timely filed; it is not available to extend the deadline for first filing a report."); *Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 815 (Tex. App.—Corpus Christi[– Edinburg] 2006, no pet.) (holding that "[a]n extension under [S]ection 74.351(c) is not available if the expert report is not served by the deadline"); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 460 (Tex. App.— Austin 2006, no pet.) (noting that [S]ection 74.351(c) did not apply to plaintiff's late-filed expert report because that section "permits

9

extensions for expert reports that the court finds deficient in substance, not for reports that are filed untimely"); *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 852–53 (Tex. App.—Texarkana 2006, no pet.).

*Floeck v. Crescent Continuing Care Ctr. Co.*, No. 14-21-00101-CV, 2022 WL 1463767, at *4 (Tex. App.—Houston [14th Dist.] May 10, 2022, no pet.) (mem. op.).

### 2. We set forth the Governor's Disaster Declaration and the relevant emergency orders issued by the Texas Supreme Court in response to the declaration.

At the advent of the COVID-19 pandemic, Governor Greg Abbott issued a proclamation under the Texas Disaster Act of 1975, certifying that "COVID-19 pose[d] an imminent threat of disaster" in all 254 Texas counties. *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2094–95 (2020); *In re Hotze*, 627 S.W.3d 642, 643–44 (Tex. 2020) (orig. proceeding); *In re Landstar Ranger, Inc.*, No. 06-20-00047-CV, 2020 WL 5521136, at *4 (Tex. App.—Texarkana Sept. 15, 2020, orig. proceeding) (mem. op.); *see also* Tex. Gov't Code Ann. § 418.014 ("Declaration of State of Disaster").

On the same day as the Governor's initial declaration, the Texas Supreme Court—relying on the authority vested in it by the Government Code—issued its First Emergency Order Regarding the COVID-19 State of Disaster. *See First Emergency Order Regarding the COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020); *see also* Tex. Gov't Code Ann. § 22.0035(b) (permitting Texas Supreme Court to modify or suspend procedures for conducting any court proceeding "affected by a disaster during the pendency of a disaster declared by the governor"). As the

10

pandemic continued, the Texas Supreme Court has issued additional emergency orders with various provisions allowing courts to modify deadlines. *See Neurological Assocs. of San Antonio, P.A. v. Torres*, No. 04-21-00120-CV, 2022 WL 1559101, at *3 (Tex. App.—San Antonio May 18, 2022, no pet.) (mem. op.). Those provisions have evolved as we have made our way through the pandemic. Below, we will discuss the specific language of the emergency orders at issue in this appeal.

As a general proposition, the power given to the Texas Supreme Court in the Government Code enables the court to empower other Texas courts to alter deadlines, including those for the filing of expert reports specified in the MLA. *Kim v. Ramos*, 632 S.W.3d 258, 269–70 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, as explained in *Kim*, the language of certain emergency orders allows trial courts to alter the expert-report service deadline contained in the MLA:

> [T]he emergency order gave the trial court broad discretion to modify or suspend any deadlines and procedures prescribed by statute. *CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-20-00700-CV, 2020 WL 7065827, at *2 (Tex. App.—Dallas Dec. 3, 2020, no pet.) (mem. op.) (noting "broad discretion" given to trial court by Texas Supreme Court's Seventeenth Emergency Order Regarding COVID-19 State of Disaster). This broad discretion to modify or suspend "any and all deadlines and procedures" prescribed by statute necessarily applies to those "deadlines and procedures" governing the time to serve an expert report under Texas Civil Practice and Remedies Code [S]ection 74.351(a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

*Id.* at 270.

**3. We set forth the standard of review that we apply to evaluate the trial court's decision to deny the Doctor's motion to dismiss.**

Usually, we apply an abuse-of-discretion standard to a motion to dismiss a health care liability claim. *Id.* at 265. But questions of law imbedded in the review of the disposition of a motion to dismiss may present legal questions that prompt the application of a de novo standard of review. *Id.* "Whether the trial court may permit the plaintiff additional time beyond the 120-day deadline is a legal question." *Miller v. Castleman*, No. 13-21-00334-CV, 2022 WL 16642121, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 3, 2022, no pet.) (mem. op.). Specifically, we are tasked here with interpreting a court order—in the form of the Texas Supreme Court's emergency orders. *See Kim*, 632 S.W.3d at 265. That task invokes a de novo standard. *Id.* ("To the extent an issue involves statutory interpretation or the legal effect of a court order, we apply a de novo standard of review." (citing *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011))).

**4. We set forth the rules of interpretation that we apply to the Texas Supreme Court's emergency orders.**

When we turn to analyzing the two emergency orders central to the resolution of this appeal, we will interpret the language in the orders according to its plain meaning. *See id.* at 269; *see also Ajao v. Hall*, 654 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Kim*, 632 S.W.3d at 271).

12

**5.      We set forth the operative terms of the Texas Supreme Court's emergency orders that are relevant to this appeal.**

Here, we are tasked with interpreting two of the Texas Supreme Court's emergency orders—the Fortieth and the Forty-Third[5]—to determine whether the trial court had the authority under the terms of the Fortieth Emergency Order to extend the time for Ms. Wilson to file her expert report until October 1, 2021. As we understand the Doctor's primary argument,[6] the trial court lacked that power because

---

[5]*See generally Forty-Third Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 929 (Tex. 2021).

[6]The Doctor also argues that Ms. Wilson's failure to serve her report in accordance with the trial court's original oral extension made her report untimely and cannot be the basis of the denial of his motion to dismiss:

> [Ms.] Wilson initially argued that the Emergency Orders extended [the] 120-day deadline because they extended any deadline to "file or serve" until July 15, 2020[,] and later until September 15, 2020. The progression of Emergency Orders had a "file or serve" extension through the Twenty-First Emergency Order, which extended any filing or service deadline until September 15, 2020. Twenty-First Emergency Order, ¶ 3. The Twenty-Second Emergency Order—and all subsequent orders—eliminated the "file or serve" extension. *See generally*[] Twenty-Second Emergency Order (containing no file or serve extension).
>
> Thus, if this deadline could extend Section 74.351's expert-report deadline, it could only extend that deadline to September 15, 2020. [Ms.] Wilson never served an expert report by that deadline and only served an expert report over a year later. [Ms.] Wilson missed the deadline imposed by the "file or serve" extension in the Emergency Orders. Thus, a "file or serve" extension did not, and could not, make her expert report timely. [Record references omitted.]

What the Doctor says is true but does not come to grips with the central question of whether the trial court had the power under later emergency orders to deny the

13

it did not act to grant the extension during the period that the Fortieth Emergency Order was in effect and instead acted during the period that the Forty-Third Emergency Order was in effect, with the Forty-Third Emergency Order not authorizing the trial court to grant an extension. To resolve the question raised by the Doctor, we must juxtapose the two orders.

We begin by setting out what we view as the relevant provisions of the Fortieth and Forty-Third Emergency Orders. With respect to the Fortieth Emergency Order, it provides the trial court with the power to modify or suspend deadlines as follows:

> 3. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal, without a participant's consent:
>
> a. except as provided in paragraph 4, modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than October 1, 2021[.]

*Fortieth Emergency Order*, 629 S.W.3d at 912. This order specified that it was "effective August 1, 2021, and expire[d] October 1, 2021, except as otherwise stated herein, unless extended by the Chief Justice of the Supreme Court." *Id.* at 913. This order was unique in the litany of emergency orders issued by the supreme court because it was the last order by which the supreme court authorized "all courts in Texas" to modify or suspend deadlines. *See id.* at 912. The statement in the following provision signaled that after the Fortieth Emergency Order expired, only justice and municipal courts would be authorized to modify and extend deadlines:

motion to dismiss, and the Doctor's argument does not suggest that the trial court was foreclosed from relying on the later orders.

14

9. This [o]rder is intended to be the final renewal of Paragraph 3(a), except the authority to modify or suspend the following deadlines and procedures in justice and municipal court proceedings will continue after October 1, 2021, until January 1, 2022:

    a. jury-related deadlines and procedures; and

    b. deadlines and procedures for pretrial hearings.

*Id.* at 913.

The next operative emergency order was the Forty-Third Emergency Order. *Forty-Third Emergency Order*, 629 S.W.3d at 929. This order referenced the ongoing effect of the Fortieth Emergency Order as follows: "The Fortieth Emergency Order (Misc. Dkt. No. 21-9079) is renewed as amended." *Id.* As signaled in the Fortieth Emergency Order, the authority to modify and suspend deadlines was limited to justice and municipal courts. *Fortieth Emergency Order*, 629 S.W.3d at 913. And the effective period of the Forty-Third Emergency Order was specified as follows: "This [o]rder is effective October 1, 2021, and expires December 1, 2021, except as otherwise stated herein, unless extended by the Chief Justice of the Supreme Court." *Forty-Third Emergency Order*, 629 S.W.3d at 930.

    **6.    We conclude that the Fortieth Emergency Order that Ms. Wilson relied on for relief was still in effect on the day that she sought relief under it.**

As we have noted, Ms. Wilson filed her expert report and a motion to enlarge on October 1, 2021—the day that the Fortieth Emergency Order stated that it "expire[d]" and the date that the Forty-Third Emergency Order stated that it was

15

"effective." If we are reading the Doctor's brief correctly, he appears to argue that any power to grant relief under the Fortieth Emergency Order did not exist on October 1 because the Forty-Third Emergency Order became effective on that date. Specifically, the Doctor argues that

> [the Forty-Third Emergency] Order "[wa]s effective October 1, 2021 . . . ." Forty-Third Emergency Order ¶ 9. By amending the Fortieth Emergency Order and becoming effective on October 1, 2021, the Forty-Third [Emergency] Order was the operative order on October 1, 2021—and thereafter. That Emergency Order removed a district court's ability to modify or suspend a deadline. *Here, the trial court did not modify or suspend a deadline before October 1, 2021, and it could not do* **as of October 1, 2021***, or at any time thereafter.* [Emphases added.]

We disagree with the Doctor's construction of the orders. First, the Doctor's argument avoids a discussion of the operative order under which the trial court acted—the Fortieth Emergency Order. As we construe the Fortieth Emergency Order, it was effective *through* October 1. First, the Fortieth Emergency Order states that it would "expire[] October 1, 2021." To the extent that the Doctor's construction suggests that the order's effectiveness did not extend into October 1, we construe the order to the contrary. Usually, when an event occurs on a particular day, the time period includes the entire day. *See Rudco Oil & Gas Co. v. Lemasters*, 146 S.W.2d 806, 811 (Tex. App.—Eastland 1940, writ dism'd, judgm't cor.) ("It is a settled general rule that fractions of a day are not considered in the computation of time."). Thus, the fact that the Fortieth Emergency Order specified that it "expire[d]" on a particular day carries the construction that it is effective through that day.

16

The Fortieth Emergency Order has an additional textual clue that reinforces our conclusion that it did not lapse on October 1. This is a paragraph specifically drafted by the Texas Supreme Court and included in the Fortieth Emergency Order that signaled a change in the course of the emergency orders. The paragraph following the one setting out the order's expiration date signals that the power of all Texas courts to modify or suspend deadlines would lapse with the Fortieth Emergency Order. The paragraph provides in operative part that the authority to modify and suspend deadlines in justice and municipal courts would "continue *after* October 1, 2021." *Fortieth Emergency Order*, 629 S.W.3d at 913 (emphasis added). It is a general rule of construction that we are to try to read all provisions of a document in harmony with each other.[7] If there is a question created by the provision stating that the Fortieth Emergency Order expired on October 1, 2021, that question is answered by the next paragraph. If the power created for justice and municipal courts would continue *after* October 1, the implication is that the existing power for all Texas courts would continue through October 1.

Again, the Doctor sidesteps whether the Fortieth Emergency Order itself indicates that it was in effect on October 1 and instead predicates his argument on the effective date of the Forty-Third Emergency Order. Thus, our next question is whether our construction of the Fortieth Emergency Order as being effective through

---

[7]For example when interpreting a statute, we should "give meaning to every word in a statute, harmonizing each provision." *Hogan v. Zoanni*, 627 S.W.3d 163, 175 (Tex. 2021).

17

October 1 is undermined by the fact that the Forty-Third Emergency Order—with its restriction that the power to modify and suspend deadlines is limited to justice and municipal courts—"is effective October 1, 2021." We acknowledge the potential conflict because the Fortieth Emergency Order expired on October 1, 2021, and the Forty-Third Emergency Order became effective the same date, thus creating a potential ambiguity that both were in effect on the same day, with one allowing all Texas courts to modify and suspend deadlines and one limiting that power to justice and municipal courts. But the Forty-Third Emergency Order does not abrogate the Fortieth Emergency Order—the later order states that the prior order is "*renewed* as amended." *Forty-Third Emergency Order*, 629 S.W.3d at 929 (emphasis added). Thus, we can apparently continue to look to the prior order's terms. As we have already noted, the Fortieth Emergency Order contains the clearest signal as to when the transition between the broader and the narrower power occurs. Again, the Fortieth Emergency Order provides that the power in the justice and municipal courts would "continue *after* October 1, 2021." *Fortieth Emergency Order*, 629 S.W.3d at 913 (emphasis added). Thus, using this phrase as the tiebreaker between the potential conflict on the effective dates of the two orders, we conclude that the power of all Texas courts to modify and suspend deadlines lasted through October 1, 2021.

### 7. The emergency orders empowered trial courts to grant relief retroactively.

Our next question is whether the trial court's authority under the Fortieth Emergency Order to modify and suspend deadlines gave the trial court power to act retroactively, i.e., whether the trial court as a general proposition could modify a deadline that had already passed. One of our sister courts has already answered this question in the affirmative, and we agree with its analysis.

The Corpus Christi–Edinburg Court of Appeals noted that the emergency-order power that was given to the trial courts to modify and suspend deadlines was "[s]ubject only to constitutional limitations." *Miller*, 2022 WL 16642121, at *3. In *Miller*, the appellant did not contend that granting a retroactive extension of the time to file an expert report under the MLA violated any state or federal constitutional limitation, and the Doctor makes no such contention in this appeal. *Id. Miller* went on to conclude that the text of the Fortieth Emergency Order itself contained no limitation on the trial court's ability to modify or suspend a deadline that had passed. *Id.* Specifically, *Miller* held that

> [t]he emergency order does not specify that the issue of an extension must be brought before the court or ruled on by the court prior to a deadline['s] lapsing. *See Fortieth Emergency Order . . .* , 629 S.W.3d at 912. Additionally, extensions of the expert[-]report deadline have on occasion been granted by a trial court after the deadline has passed. *See Kim*, 632 S.W.3d at 262–63; *Hanzi v. Bailey*, 48 S.W.3d 259, 263–64 (Tex. App.— San Antonio 2001, pet. denied). The supreme court's emergency orders relating to COVID-19 undoubtedly vest trial courts with "broad discretion" to modify deadlines and procedures. *See Kim*, 632 S.W.3d at 270; *see also Broadway v. Lean on 8, Inc.*, No. 03-21-00663-CV, 2022 WL

19

3691678, at \*4 (Tex. App.—Austin Aug. 26, 2022, no pet.) (mem. op.); . . . *Burns*, . . . 2020 WL 7065827, at \*2 . . . . In the absence of any constitutional concern, we conclude that the trial court was authorized to retroactively extend the expert[-]report deadline. *See Fortieth Emergency Order* . . . , 629 S.W.3d at 912.

*Id.* We agree with *Miller* that the terms of the Fortieth Emergency Order do not limit the trial court's ability to modify or suspend deadlines to only deadlines that have not passed. Thus, the Fortieth Emergency Order empowered the trial court to retroactively modify or suspend deadlines.

> **8. We conclude that the trial court had the power to grant relief under the Fortieth Emergency Order even though it did so after that order had expired.**

Here, we deal with an added complication because the trial court did not hear the Doctor's motion to dismiss until January 11, 2022, which was almost four months after the October 1, 2021 expiration date of the Fortieth Emergency Order. The Doctor argues that even if Ms. Wilson had sought relief before the Fortieth Emergency Order had expired, she still was not entitled to relief because the trial court did not grant that relief before the Fortieth Emergency Order expired. Specifically, the Doctor argues that

> [e]ven assuming the Fortieth Emergency Order was still effective on October 1, 2021, the trial court did not act until January [11], 2022—or long after that Fortieth Emergency Order [had] expired under its own terms. In January 2022, the district court had no power to change Section 74.351's expert-report deadline—or any other deadline. More importantly, by January 2022, the Forty-Third Emergency Order had already removed the authority of the trial court to alter deadlines like this one. The trial court had no authority to retroactively extend the expert-

20

report deadline. The trial court reversibly erred by granting an extension [that] it had no power to grant. [Record citations omitted.]

Again, we reject the Doctor's argument. As we have held, Ms. Wilson sought relief under the Fortieth Emergency Order before that order expired. And as we have noted above, the emergency orders empower trial courts to grant retroactive relief. The Doctor's argument assumes that after timely invoking the order, relief could be granted only if the trial court also acted to grant the relief before the order expired. The Fortieth Emergency Order contains no language providing that relief must be sought *and granted* before the order expired; instead, its terms signal the contrary. Further, the Doctor's construction is contradictory to the purpose of the emergency orders.

As noted above, the absence of limiting language in the order was the basis for the Corpus Christi–Edinburg Court of Appeals's holding that the Fortieth Emergency Order permitted retroactive relief. *See id.* Also, the order does not specify that relief must not only be sought but granted before the order expires. Indeed, the language of the Forty-Third Emergency Order contains language that in our view militates against that construction. As we have noted, the emergency orders are daisy chained together. The Forty-Third Emergency Order, which was the successor to the Fortieth Emergency Order, provided that the earlier order "is renewed as amended." *Forty-*

21

*Third Emergency Order*, 629 S.W.3d at 929.[8] We read this provision to mean that the Fortieth Emergency Order retained some viability and that subsequent orders did not abrogate the powers created by it. *Black's Law Dictionary* defines "renewal" as "[t]he act of restoring or reestablishing." *Renewal*, Black's Law Dictionary (11th ed. 2019). Thus, the terminology of the Forty-Third Emergency Order signals that some form of the Fortieth Emergency Order was renewed. *See Forty-Third Emergency Order*, 629 S.W.3d at 929.

But the phrase also provides that the prior order is amended by the Forty-Third Emergency Order. The question becomes how we should read the renewed as "amended" phrase: (1) that the Forty-Third Emergency Order should be read to mean that the trial court had the power to act under the Fortieth Emergency Order when the Fortieth Emergency Order was invoked before it expired; or (2) that if relief were sought after the Fortieth Emergency Order had expired, the Forty-Third Emergency Order would control, meaning that relief cannot be granted? We conclude that the first reading is the more supportable one because it gives effect to the fact that the Fortieth Emergency Order was not abrogated but renewed, suggesting that the powers created by it did not evaporate on the date that it expired.

---

[8]The Forty-Fifth Emergency Order—which was in effect when the trial court held its hearing and denied the Doctor's motion to dismiss—provided that "[t]he Forty-Third Emergency Order (Misc. Dkt. No. 21-9119) is renewed as amended." *See Forty-Fifth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 21-9145, 2021 WL 6112278, at *1 (Tex. Nov. 23, 2021).

Our construction is reinforced by our view of the overall purpose of the emergency orders.[9] Obviously, their purpose is to address the fact that the judicial system's efficiency has been impaired by the stresses of the pandemic. The Fortieth Emergency Order provided a two-month period—from August 1 until October 1, 2021—for when it was in effect. *Fortieth Emergency Order*, 629 S.W.3d at 913. It appears contradictory to put an order in place that addresses the fact that the judicial system may not be even functioning or at least not functioning as efficiently as before the pandemic, to provide the court with the power to address that lack of efficiency by granting extensions sought during a sixty-day window, but to then construe the order to mean that the trial court must act to grant the extension within this brief timeframe or else lose the power to grant the extension. In our view, such a construction inhibits rather than serves the purpose of the emergency order, and that view informs our construction of the renewal provision in the Forty-Third Emergency Order and later orders to mean that when, as here, relief is sought during the time period that an order is in effect, the trial court is not foreclosed from granting the requested relief if it does not hear and grant the relief before the order expires.

_____

[9]Again, looking to authority dealing with statutory text, "When that purpose can be determined from the text, as it can easily be in these cases, '[a] textually permissible interpretation that furthers rather than obstructs [a statute's] purpose should be favored.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 581 (Tex. 2014) (Hecht, C.J., dissenting) (quoting Antonin Scalia & Brian Gardner, Reading Law 20 (2012)).

**9. By denying the Doctor's motion to dismiss, the trial court implicitly granted Ms. Wilson relief under the emergency order.**

The Doctor also argues that an extension under the Fortieth Emergency Order was never implemented because the trial court did not sign an order extending the deadline for a "stated period." Here, the trial court denied the Doctor's motion to dismiss and, in doing so, noted that it had considered Ms. Wilson's motions to enlarge that invoked the Fortieth Emergency Order. By this act, the trial court impliedly granted relief under the emergency order. Further, at the hearing on the motion to dismiss, the trial court noted that it was considering its power under the Fortieth Emergency Order when it stated that "the [Texas] Supreme Court allowed us to enlarge the time—or recognize the October 1st deadline."

The Corpus Christi–Edinburg Court of Appeals has explained how the denial of a motion to dismiss subsumes an implied finding granting relief under an emergency order, especially when made in combination with a trial court's statement on the record that it was considering COVID-related circumstances:

> Assuming the []MLA applies to [appellee's] suit, the only permissible way the trial court could have found the report to be timely was if it had used its discretion under the emergency order to enlarge the deadline to serve the report. *Cf. Kim*, 632 S.W.3d at 262–63. A court may implicitly extend the expert[-]report deadline when denying a motion to dismiss. *See Moncado v. Trujillo*, 267 S.W.3d 420, 423 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). Here, the trial judge stated at the hearing that, "due," in part, "to the COVID issue," she was denying the motion to dismiss. Because an implicit order extending the deadline pursuant to the COVID-19 emergency order is supported by the record, we conclude [that] the trial court enlarged the expert report deadline by sixty

24

days when it denied the motion to dismiss, making the expert report served on [appellant] timely. *See id.*; *Rosemond*[ *v. Al-Lahiq*], 331 S.W.3d [764,] 766 [(Tex. 2011)]. Thus, the trial court did not abuse its discretion by denying [appellant's] motion to dismiss. *See Daybreak Cmty. Servs., Inc. v. Cartrite*, 320 S.W.3d 865, 873 (Tex. App.—Amarillo 2010, no pet.).

*Miller*, 2022 WL 16642121, at \*4; *see also Hogue v. Steward*, No. 11-21-00124-CV, 2022 WL 16640834, at \*4 (Tex. App.—Eastland Nov. 3, 2022, no pet.) (mem. op.) (stating that an order will be upheld on any theory supported by the record and concluding that the record indicated that the trial court had implicitly extended the deadline for serving the expert report under the emergency order when denying the motion to dismiss). Thus, we reject Dr. Wilson's argument that the trial court failed to grant relief under the Fortieth Emergency Order.

10. **We reject the Doctor's argument that the Texas Supreme Court lacks the emergency power to extend the deadline for filing and service of an expert report under the MLA.**

When discussing the extra-pandemic environment of the MLA, the Doctor highlights what we have already noted—the MLA does not provide a mechanism to extend the time for filing an expert report. After noting this, the Doctor's brief raises a hypothetical:

> At face value, the [Texas] Supreme Court does not have the power to enter [e]mergency [o]rders to alter that deadline. But that argument is unnecessary here—[Ms.] Wilson cannot prevail even if the [e]mergency [o]rders are given full effect. Thus, the trial court reversibly erred by not dismissing this case with prejudice and awarding the statutory remedies.

The Doctor's brief does not acknowledge the authority holding that the Texas Supreme Court has emergency authority to alter the MLA's expert-report deadline,

25

nor does he make any argument that such authority is not provided to the Texas Supreme Court under its authority to modify or suspend procedures when the Governor has issued a disaster declaration. *See* Tex. Gov't Code Ann. § 22.0035(b); *Kim*, 632 S.W.3d at 269 (discussing Texas Supreme Court's exercise of its powers under Section 22.0035(b) to modify and suspend deadlines and procedures in emergency orders). Thus, even if the Doctor's brief raised more than a hypothetical that the Texas Supreme Court lacks the power to alter the MLA expert-report deadline, we would reject such argument.

We have considered the Doctor's arguments in his first issue that the trial court either lacked the authority under the Fortieth Emergency Order to extend the service deadline for Ms. Wilson's expert report or failed to exercise that authority in a timely fashion. We reject the Doctor's arguments and overrule the Doctor's first issue.

**B. We do not reach the question of whether the report served was so inadequate that it was no report at all because the Doctor did not perfect an appeal from the trial court's order that ruled on that issue.**

The question of whether we have jurisdiction over the Doctor's second issue—contending that the report that Ms. Wilson served is so deficient that it constitutes no report—requires a discussion of the procedural complications at play in this appeal.[10]

---

[10]We have both the power and the obligation to determine whether we have jurisdiction over an issue. As we have previously summarized,

> [w]e have jurisdiction to determine our own jurisdiction. *Consol. Healthcare Servs., LLC v. Mainland Shopping Ctr., Ltd.*, 589 S.W.3d 915, 920

As we have noted, there are two orders below—an order denying the Doctor's motion to dismiss and an order denying his objections to the report. The order denying the motion to dismiss is specific in what the trial court considered and what it was ruling on with respect to the dismissal; specifically, the order recites that

> [t]he [c]ourt, having considered [the Doctor's] Motion to Dismiss for Failure to Serve an Expert Report Pursuant to Texas Civil Practice & Remedies Code §[ ]74.351(b), [Ms. Wilson's] Response to Motion to Dismiss and Motion to Enlarge Time to File Chapter 74 Expert Report, [Ms. Wilson's] Supplemental Response to Motion to Dismiss and Motion to Enlarge Time to File Chapter 74 Expert Report, [Ms. Wilson's] Second Supplemental Response and Motion to Enlarge Time to File Expert Report, [the Doctor's] Reply to [Ms. Wilson's] Second Supplemental Response and Motion to Enlarge Time to File Expert Report, the other pleadings on file in this cause, and the argument of counsel, is of the opinion that [the Doctor's] Motion to Dismiss for Failure to Serve an Expert Report Pursuant to Texas Civil Practice & Remedies Code §[ ]74.351(b) should be denied.

---

(Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re Doe*, 397 S.W.3d 847, 849 (Tex. App.—Fort Worth 2013, no pet.). An appellate court must always consider if jurisdiction is proper, even if it is not raised by the parties. *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex. 1990). A court may not address the merits of a claim if it lacks jurisdiction to do so. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 291–92 (Tex. 2013); *AECOM USA, Inc. v. Mata*, No. 04-15-00773-CV, 2016 WL 5112222, at *2 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.). If the record does not conclusively establish the appellate court's jurisdiction, the appeal must be dismissed. *Pipes v. Hemingway*, 358 S.W.3d 438, 445 (Tex. App.—Dallas 2012, no pet.); *see* Tex. R. App. P. 42.3(a).

*Johnson v. Glenview Auto Fund, LLC*, No. 02-20-00369-CV, 2021 WL 3557078, at *2 (Tex. App.—Fort Worth Aug. 12, 2021, no pet.) (mem. op.).

The two pleadings filed by the Doctor referenced by name in the order granting the motion to dismiss do not raise a ground that the report is so deficient that it constitutes no report. Instead, that issue is raised only in the Doctor's separately filed objections, with those objections being resolved in their own freestanding order. This order specified that it was the motion to dismiss that was denied, and it did not address the objections. Further, the motion to dismiss and the Doctor's reply, which are referenced in the order denying the motion to dismiss, did not incorporate the objections that challenge the report on the ground that it was deficient.

The Doctor's notice of appeal is specific as to which order he is appealing. The notice states,

> [The Doctor] gives his notice of his intent to appeal from the *interlocutory* [*o*]*rder denying* [*the Doctor's*] [*m*]*otion to* [*d*]*ismiss*, signed by the Hon. Tom Lowe, Judge of the 236th Judicial District Court, Tarrant County, Texas on or about March 11, 2022, in the case styled Juaquaetta Wilson, Plaintiff v. Kraig Pepper, D.O., Defendant, No. 236-311119-19.
>
> [The Doctor] perfects this appeal from the interlocutory order under the provisions of Section 51.014(a)(9) of the Texas Civil Practice & Remedies Code. [Emphasis added.]

The section of the Civil Practice and Remedies Code referenced in the Doctor's notice provides that

> [a] person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351.

28

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). Section 74.351(b) provides that "[i]f, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall" dismiss the case with prejudice and award fees and costs. *Id.* § 74.351(b).[11]

Section 74.351(b) may be a basis for two challenges—that no report was timely served or that the report failed to meet the statutory requirements for a report. *See Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008). Of course, not every report that fails to meet the standards of the MLA warrants dismissal. We have explained the distinction between a "no report" case and one in which there is a "deficient" report as follows:

> The Act distinguishes between situations [in which] a report is timely served but deficient and those [in which] no report is served. *Taton v. Taylor*, No. 02-18-00373-CV, 2019 WL 2635568, at *8 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.). If a report is timely served but deficient, the trial court may grant a thirty-day extension to cure the deficiency. *Id.*

---

[11]The statute authorizing interlocutory appeals also provides for another appeal under the MLA. An order granting relief under Section 74.351(*l*) is the subject of its own interlocutory appeal: "A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . grants relief sought by a motion under Section 74.351(*l*)." *Id.* § 51.014(a)(10). Section 74.351(*l*) provides that "[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good-faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). Section 74.351(*l*) plays no part in this appeal.

"In distinguishing between a deficient report and no report, we are guided by the supreme court's decision in *Scoresby* . . . ." *Id.* (citing *Scoresby*[ *v. Santillan*], 346 S.W.3d [546,] 546[ (Tex. 2011)]). Under *Scoresby*, a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated. *Scoresby*, 346 S.W.3d at 557. "[T]his is a minimal standard," *id.*, and thus we have held that "[w]hen we conclude that an expert report is deficient," we generally "do not render" judgment; instead, we usually "remand for the trial court to consider whether to grant a thirty-day extension," *UHP, LP v. Krella*, No. 02-19-00136-CV, 2019 WL 3756203, at *1 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (per curiam) (mem. op.); *see Mangin v. Wendt*, 480 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("[W]hen the court of appeals finds deficient a report that the trial court considered adequate, the plaintiff should be afforded one 30-day extension to cure the deficiency, if possible." (internal quotation omitted)); *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 840 (Tex. App.— Houston [14th Dist.] 2012, pet. denied) ("[M]ost purported expert reports are likely to fall into the deficient-report category and be eligible for a thirty-day extension . . . ."). The *Scoresby* court held that because the plaintiff's report satisfied this minimal standard, the plaintiff was entitled to an opportunity to cure, even though the report did not state the standard of care but only implied that the standard was inconsistent with the physicians' conduct, and even though there were potential problems with the expert's qualifications as well. 346 S.W.3d at 557.

*Mitchell v. Swanson*, No. 02-19-00460-CV, 2020 WL 6065986, at *5 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.); *see also Ogletree v. Matthews*, 262 S.W.3d 316, 323 (Tex. 2007) (Willett, J., concurring) (describing some expert reports as so deficient as to constitute no report).

The Doctor's objection contended that the report was not a good-faith effort and that Ms. Wilson's claim should be dismissed with prejudice under Section 74.351(b). Though we do not reach the question, arguably, the denial of what was

30

styled an objection would have been considered the denial of a motion under Section 74.351(b), and an interlocutory appeal would have been authorized by Section 51.014(a)(9). *See Scoresby*, 346 S.W.3d at 557. For example, even when the trial court grants an extension to file an amended report—an act for which Section 51.014(a)(9) specifically prohibits an interlocutory appeal—a defendant may file an appeal under Section 51.014(a)(9) to argue that a report is so deficient that it constitutes no report and should be dismissed. *Envision Radiology Tex. LP v. Trader*, No. 05-20-00529-CV, 2022 WL 2826896, at *3 (Tex. App.—Dallas July 20, 2022, no pet.) (mem. op.).[12]

---

[12]The specific discussion in *Envision Radiology* was as follows:

An appeal may not be taken from an order granting an extension to cure the deficiency under § 74.351(c). [Tex. Civ. Prac. & Rem. Code Ann.] § 51.014(a)(9). If a deficient report is served and the trial court grants a 30-day extension, that decision is not subject to review even if it is coupled with an order denying a motion to dismiss. *See Scoresby*, 346 S.W.3d at 549; *Ogletree . . .* , 262 S.W.3d [at] 321 . . . . However, after an extension has been granted, if the defendant again moves to dismiss, a denial of that motion to dismiss is appealable. *Scoresby*, 346 S.W.3d at 555.

But not all extensions under § 74.351(c) will escape appellate review. *Westover Continuing Care Ctr. Ltd. Co. v. Adams*, No. 04-21-00121-CV, 2021 WL 5605286, at *2 (Tex. App.—San Antonio[ ]Dec. 1, 2021, no pet.) (mem. op.). Section 74.351 distinguishes between a report that is timely served but deficient and when no report is served. *Methodist Hosp. of Dall*[.] *v. Nieto*, No. 05-18-01073-CV, 2019 WL 6044550, at *2 (Tex. App.—Dallas Nov. 15, 2019, pet. denied) (mem. op.[ on reh'g]). A document utterly devoid of substantive content will not qualify as an expert report. *See Scoresby*, 346 S.W.3d at 549. In order to determine whether it has jurisdiction, an appellate court conducts a lenient, three-part test to distinguish between an expert report that is effectively "no report" and one that is deficient: (1) whether the report was timely filed;

The problem in this appeal is not that the Doctor lacked a right to appeal the question that would put to us the determination of whether the report served by Ms. Wilson was no report but whether the Doctor exercised his right to appeal the order resolving that issue against him. His notice of appeal specifically listed only one order—the order denying his motion to dismiss. And that motion sought dismissal only because the Doctor contended that the report was not served timely.

Certainly, the Doctor also contended in the trial court that the report constituted no report and obtained an order denying that contention. But the order that the Doctor appealed resolved a motion that did not raise the no-report ground or incorporate the grounds of the objection that raised the no-report contention. Section 51.014(a)(9), which entitled the Doctor to an interlocutory appeal, ties that right to a particular order as it provides that "[a] person may appeal from *an interlocutory order . . . that . . . denies all or part of the relief sought by a motion under Section*

---

(2) whether the report contains the opinion of an individual with expertise that the claim has merit; and (3) whether the defendant's conduct is implicated. [*Id.*] at 557. This test is lenient for two reasons: (1) to avoid multiple interlocutory appeals; and (2) to allow plaintiffs a fair opportunity to show their claim is not frivolous. *Id.* However, any determination as to whether a report meets the minimal *Scoresby* requirements is to be made when the document purporting to be an expert report is timely served and properly challenged. *Sherrill v. Williams*, No. 05-14-00847-CV, 2015 WL 1910015, at *2 (Tex. App.— Dallas Apr. 28, 2015, pet. denied) (mem. op.). A report is "properly challenged" by objections filed within the relevant 21-day window. [Tex.] Civ. Prac. & Rem. [Code Ann.] § 74.351[(a)]; *Sherrill*, 2015 WL 1910015, at *2.

*Id.*

32

*74.351(b)."* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (emphasis added). Although the Doctor filed an appeal invoking Section 51.014(a)(9), he did so of only one order that denied relief sought by a motion under Section 74.351(b)—the order denying the motion to dismiss based on the sole ground that the report was untimely.[13]

And the process of appealing an interlocutory order requires an appellant to be explicit in which order he is appealing. The appeal of an interlocutory order is perfected pursuant to Texas Rule of Appellate Procedure 28 governing accelerated appeals. Tex. R. App. P. 28.1(a) ("Appeals from interlocutory orders (when allowed by statute) . . . are accelerated appeals."). To perfect an accelerated appeal, a party must file a notice of appeal in accordance with Rule 25.1. *See* Tex. R. App. P. 28.1(b) (stating that "an accelerated appeal is perfected by filing a notice of appeal in compliance with Rule 25.1"). In turn, Rule 25.1 requires the notice of appeal to "state the date of the judgment or order appealed from." Tex. R. App. P. 25.1(d)(2). Below,

---

[13]Obviously, a party's claims on appeal are limited to the grounds actually stated in the Section 74.351(b) dismissal motion that he filed. An appellate court limits its review to the specific grounds that the motion raises; a motion raising one ground does not permit appellate review of an issue based on a ground not raised in the motion to dismiss. *Thompson v. Fong*, 650 S.W.3d 164, 167–68 (Tex. App.—El Paso 2021, pet. denied) (stating that the issues raised on appeal must comport with the grounds raised in a motion to dismiss filed in an MLA case).

both orders potentially at issue were signed on the same date, but the Doctor is clear

regarding which order he is appealing—the order denying his motion to dismiss.[14]

Cases hold that when a party specifies the interlocutory order that is being

appealed, that decision locks in the party's decision regarding which order we may

review. Specifically, a number of cases hold that the attempt to amend a notice of

appeal that lists one interlocutory order to appeal a different interlocutory order is

impermissible:

> An appellant may amend the notice of appeal to correct a defect or an omission at any time before the appellant files his brief and with leave of the appellate court after appellant files his brief. Tex. R. App. P. 25.1(g). However, Rule 25 does not allow an appellant to amend a notice of appeal in which the appellant challenges one particular interlocutory order to a challenge of an entirely different, separate interlocutory order. *Rainbow Grp., Ltd. v. Wagoner*, 219 S.W.3d 485, 492 (Tex. App.—Austin 2007, no pet.); *see also Dewalt v. State*, 417 S.W.3d 678, 688–91 & n.51 (Tex. App.—Austin 2013, pet. ref'd) (dismissing appeal for want of jurisdiction because appellant attempted to amend notice of appeal to include appeal of subsequent judgment nunc pro tunc where such notice was not amendable and the notice was filed too late to invoke jurisdiction over the subsequent judgment); *Perez v. Perez*, No. 09-06-521-CV, 2007 WL 5187895, at *6–7 (Tex. App.—Beaumont May 22, 2008, pet. denied) (mem. op.) (holding appellate court did not have jurisdiction to consider appellant's challenge to a post-trial petition to modify the parent–child relationship where appellant stated in his notice of appeal that he was only appealing from the final divorce decree); *Thomas v. Thomas*, No. 14-02-01286-CV, 2003 WL 1088220, at *2 (Tex. App.—Houston [14th Dist.] Mar. 13, 2003, no pet.) (per curiam) (mem. op.) (dismissing appeal for want of jurisdiction [because] appellant indicated in her notice of appeal that she was appealing from a different order

---

[14]The Doctor attached to his notice of appeal a copy of both orders. But because the language of his notice of appeal was explicit about which order he was appealing, we are bound by the statement in his notice of appeal.

than that which she later claimed to be appealing from and both orders were final and appealable orders that required notices of appeal).

*Oak Creek Homes, LP v. Moore*, No. 11-15-00291-CV, 2016 WL 6998949, at \*2 (Tex. App.—Eastland Nov. 30, 2016, no pet.) (mem. op.); *see also Nguyen v. Chen*, No. 14-22-00783-CV, 2023 WL 166820, at \*1 (Tex. App.—Houston [14th Dist.] Jan. 12, 2023, no pet. h.) (per curiam) (mem. op.) (holding that appellant's December 8, 2022 amended notice of appeal, which stated a different order was being appealed than the order listed in the original notice of appeal, was not sufficient to timely invoke appellate court's jurisdiction); *Nnaka v. Mejia*, No. 01-18-00779-CV, 2020 WL 425126, at \*5 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, no pet.) (mem. op.) ("Multiple Texas courts have held that a party may not amend its notice of appeal to challenge an entirely different order than the one named in the original notice of appeal.").[15]

---

[15]Before this case was submitted, we notified the Doctor of our concern regarding a lack of jurisdiction over his second issue. He filed a "Statement of Jurisdiction," but it does not controvert what we have set forth above and therefore does not provide a basis giving us jurisdiction to review his second issue. The statement provides that

> [i]n this instance, the trial court denied [the Doctor's] Motion to Dismiss for Failure to Serve an Expert Report Pursuant to Texas Civil Practice & Remedies Code § 74.351(b). [The Doctor's] "objections" to the expert report raised two issues—timeliness and sufficiency. The conclusion summed up [the Doctor's] argument—"[Ms. Wilson's] Chapter 74 Expert Report . . . is deficient because it is not timely, and [the expert's] standard of care and causation opinions are either absent or conclusory. Accordingly, [the] report does not represent a good[-]faith effort to comply with [the expert-report statute]." [The Doctor] then requested that his objections—to the timeliness and sufficiency of the report—be sustained and that the case be dismissed with prejudice. In other words,

Here, the Doctor appealed an interlocutory order that raised the issue that Ms. Wilson did not file a timely expert report, and he argued that—for this reason—his motion to dismiss should have been granted. He failed to appeal the separate, freestanding interlocutory order that denied his objection contending that Ms. Wilson's expert report was so deficient that it constituted no report at all. The Doctor has not perfected an appeal from the order on his objections, and we have no jurisdiction to review his challenges to it. We therefore lack jurisdiction to review the merits of the Doctor's second issue.

## IV. Conclusion

Having overruled the Doctor's first issue after concluding that the trial court did not err by denying the Doctor's motion to dismiss on the basis that Ms. Wilson's

the report sought dismissal for two reasons—first, that the report was untimely and second, that the report was deficient. The trial court then denied that dismissal motion.

While the trial court signed a separate order denying [the Doctor's] Objections to [Ms. Wilson's] Chapter 74 Expert Report, that does not change the equation. That was the title of the document in which [the Doctor] sought dismissal for the expert report being untimely and deficient. Thus, the order denying the requested relief in that document denied the requested relief of dismissal. Regardless, [the Doctor] sought dismissal for two reasons, and the trial court denied that request without specifying either reason, placing both issues properly before the [c]ourt. [Record references omitted.]

This argument begs the question. We do not disagree that the objections raised both the timeliness of the report and deficiencies in its substance. What we disagree with is whether the order denying the objections was appealed. It was not. Only the order denying the motion to dismiss was appealed, and that motion did not raise the alleged deficiency of the report.

36

report was not timely served and lacking jurisdiction to address the merits of the Doctor's second issue, we affirm the trial court's order denying the Doctor's motion to dismiss.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  March 16, 2023